No. 24-3395

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ALBERT PICKETT, JR., *et al.*,

Plaintiffs-Appellees

v.

CITY OF CLEVELAND, OH,

Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

# CORRECTED BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PLAINTIFFS-APPELLEES ON THE ISSUE ADDRESSED HEREIN

DAMON SMITH
General Counsel

SASHA SAMBERG-CHAMPION
Deputy General Counsel for
Enforcement and Fair Housing

WILLIAM F. LYNCH
Assistant General Counsel for
Fair Housing Compliance

JULIA DYKSTRA
Trial Attorney
Department of Housing and
Urban Development

KRISTEN CLARKE
Assistant Attorney General

TOVAH R. CALDERON
SYDNEY A.R. FOSTER
KATHERINE E. LAMM
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 616-2810

# TABLE OF CONTENTS

**PAGE**


INTEREST OF THE UNITED STATES ..... 1

STATEMENT OF THE ISSUE ..... 1

STATEMENT OF THE CASE ..... 2

A. Statutory and Regulatory Background ..... 2

B. Factual and Procedural Background ..... 4

SUMMARY OF ARGUMENT ..... 7

ARGUMENT

The placement of a lien can make housing unavailable within the meaning of Section 3604(a)'s catchall phrase. ..... 9

A. Whether Section 3604(a) reaches a challenged practice and whether that practice is discriminatory are separate questions. ..... 9

B. Section 3604(a)'s prohibition on discriminatory practices that make housing unavailable is broad and reaches precursors to housing loss. ..... 13

1. Section 3604(a) reaches a wide range of activities that affect housing opportunities. ..... 13

2. Post-acquisition discrimination falls within Section 3604(a). ..... 16

3. Actions that precipitate the denial or loss of housing can make housing unavailable under Section 3604(a). ..... 21

**TABLE OF CONTENTS (continued): PAGE**

C. Water liens can fall within Section 3604(a)'s scope if they are precursors to housing loss. .................................. 26

CONCLUSION ........................................................................... 35

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM DESIGNATING DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Bloch v. Frischholz*,
587 F.3d 771 (7th Cir. 2009) (en banc) .......................... 10-11, 19-20

*Castillo Condo. Ass'n v. HUD*, 821 F.3d 92 (1st Cir. 2016) .................... 20

*City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995) ................ 14

*Clifton Terrace Assocs., Ltd v. United Techs. Corp.*,
929 F.2d 714 (D.C. Cir. 1991) ........................................................ 21

*Connecticut v. Teal*, 457 U.S. 440 (1982) ............................................. 30

*Cowell v. Palmer Twp.*, 263 F.3d 286 (3d Cir. 2001) ............................. 31

*Cox v. City of Dallas*, 430 F.3d 734 (5th Cir. 2005) ............................... 20

*First Atlas Funding Corp. Through Kersting v. United States*,
23 Cl. Ct. 137 (U.S. Ct. Cl. 1991) .................................................. 31

*Fischer v. United States*, 144 S. Ct. 2176 (2024) .................................. 17

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) ......... 2, 13

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty.
Metro Hum. Rels. Comm'n*, 508 F.3d 366 (6th Cir. 2007) ....... 10, 33

*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) ..................................... 12

*Hanson v. Veterans Admin.*, 800 F.2d 1381 (5th Cir. 1986) ........ 15-16, 25

*Hargraves v. Capital City Mortg. Co.*,
140 F. Supp. 2d 7 (D.D.C. 2000) ....................................... 26, 29-30

**CASES (continued): PAGE**

*HARR, LLC v. Town of Northfield*,
423 F. Supp. 3d 54 (D. Vt. 2019) .................................................. 31

*Hunt v. Aimco Props., L.P.*,
814 F.3d 1213 (11th Cir. 2016) .................................... 20, 22, 25, 30

*Jackson v. Okaloosa Cnty., Fla.*,
21 F.3d 1531 (11th Cir. 1994) ........................................................ 15

*Jersey Heights Neighborhood Ass'n v. Glendening*,
174 F.3d 180 (4th Cir. 1999) .......................................................... 21

*Laufman v. Oakley Bldg. & Loan Co.*,
408 F. Supp. 489 (S.D. Ohio 1976) ................................................ 16

*Mackey v. Nationwide Ins. Companies*,
724 F.2d 419 (4th Cir. 1984) .......................................................... 25

*Michigan Prot. & Advoc. Serv., Inc. v. Babin*,
18 F.3d 337 (6th Cir. 1994) .................................................. *passim*

*NAACP v. American Fam. Mut. Ins. Co.*,
978 F.2d 287 (7th Cir. 1992) ............................................... 24-25, 29

*Nationwide Mut. Ins. Co. v. Cisneros*,
52 F.3d 1351 (6th Cir. 1995) ................................................ *passim*

*Nevels v. Western World Ins. Co.*,
359 F. Supp. 2d 1110 (W.D. Wa. 2004) .................................... 26, 30

*Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205 (9th Cir.),
*as amended* (Apr. 30, 2010) ...................................................... 15, 25

*Pitchford v. American Title Co.*, No. 04-2743,
2007 WL 9706252 (W.D. Tenn. Mar. 29, 2007) ................. 25-26, 29

**CASES (continued): PAGE**

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ........ *passim*

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972) ........ 14

*United Farm Bureau Mut. Ins. Co. v. Metropolitan Hum. Rels. Comm'n,* 24 F.3d 1008 (7th Cir. 1994) ........ 19

*United States v. City of Parma*, 661 F.2d 562 (6th Cir. 1981) ........ 16

*United States v. Mitchell*, 580 F.2d 789 (5th Cir. 1978) ........ 16

*Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1 (D.D.C. 1999) ........ 23, 26

*2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*, 444 F.3d 673 (D.C. Cir. 2006) ........ 18-20

**STATUTES:**

Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* (Title VII) ........ 14

Fair Housing Act, 42 U.S.C. 3601 *et seq.* ........ 1
42 U.S.C. 3601 ........ *passim*
42 U.S.C. 3602(i)(1)-(2) ........ 22
42 U.S.C. 3604(a) ........ *passim*
42 U.S.C. 3604(b) ........ 26, 34
42 U.S.C. 3604(f)(1) ........ 11, 25
42 U.S.C. 3605(c) ........ 33
42 U.S.C. 3607(b)(1) ........ 33
42 U.S.C. 3607(b)(4) ........ 33
42 U.S.C. 3610 ........ 1
42 U.S.C. 3612 ........ 1
42 U.S.C. 3614 ........ 1
42 U.S.C. 3614a ........ 1

**STATUTES (continued):** **PAGE**

Ohio Rev. Code Ann. (West 2024) .......... 28
§ 743.04 .......... 28
§ 5721.10 .......... 28
§ 5721.18 .......... 28
§ 5721.31 .......... 28
§ 5721.37 .......... 28

**REGULATIONS:**

24 C.F.R. 100.1 *et seq.* .......... 1

24 C.F.R. 100.70(d)(1)-(5) .......... 16

24 C.F.R. 100.70(d)(4) .......... 24

24 C.F.R. 100.500(c) .......... 3-4

24 C.F.R. 100.500(c)(1) .......... 3, 12

24 C.F.R. 100.500(c)(2) .......... 3, 12

24 C.F.R. 100.500(c)(3) .......... 3, 12

**LEGISLATIVE HISTORY:**

H.R. Rep. No. 711, 100th Cong., 2d Sess. (1988) .......... 14

**RULES:**

Fed. R. App. P. 29(a) .......... 1

Fed. R. Civ. P. 23(a)(2) .......... 6

Fed. R. Civ. P. 23(b)(3) .......... 6

Fed. R. Civ. P. 23(f) .......... 7

**MISCELLANEOUS:** **PAGE**

*Black's Law Dictionary* (12th ed. 2024) .................................................. 18

*Oxford English Dictionary*, https://perma.cc/48GL-DJTR ...................... 17

*Merriam-Webster Dictionary.com*, https://perma.cc/4ZDR-BZTR .......... 17

*Webster's Third New Int'l Dictionary* (1971)..................................... 15, 18

## INTEREST OF THE UNITED STATES

The United States has a substantial interest in this appeal, which raises an important question about a key provision in the Fair Housing Act (FHA), 42 U.S.C. 3601 *et seq*. Among other things, that provision—42 U.S.C. 3604(a)—makes it unlawful to "refuse to sell" or to "otherwise make unavailable or deny" housing to a person based on race or other protected characteristics. The Department of Justice and the Department of Housing and Urban Development (HUD) share enforcement authority under the FHA. *See* 42 U.S.C. 3610, 3612, 3614. Congress also authorized HUD to issue regulations implementing the statute. 42 U.S.C. 3614a; *see* 24 C.F.R. 100.1 *et seq*.

The United States offers its views pursuant to Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUE

The United States addresses the following question only:

Whether a municipality's placement of liens on certain properties with delinquent water bills can make housing "unavailable" within the

meaning of the FHA, 42 U.S.C. 3604(a), such that discrimination in imposing the liens may be unlawful.[1]

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

The FHA "broadly prohibits discrimination in housing throughout the Nation." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 93 (1979). Among other things, the FHA makes it unlawful to "refuse to sell or rent," to "refuse to negotiate for the sale or rental of," or to "otherwise make unavailable or deny" a "dwelling" to any person "because of" race, religion, sex, and certain other protected characteristics. 42 U.S.C. 3604(a). This appeal presents a question about the meaning of "otherwise make unavailable or deny," which the Supreme Court has described as a "catchall phrase[]." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 535 (2015) (*Inclusive Communities*).

A plaintiff may prove unlawful discrimination in violation of Section 3604(a) in several ways. A plaintiff pursuing a disparate-

[1] The United States takes no position on any other aspect of this case, including the district court's independent assessments of the factual record and whether to certify a class.

treatment theory may establish liability by proving that a defendant acted with discriminatory intent. *Inclusive Communities*, 576 U.S. at 524. This case, however, involves a disparate-impact claim, which the Supreme Court held is cognizable in *Inclusive Communities*. *Id.* at 545. A plaintiff may prove such a claim by showing that a defendant's neutral practice has an unjustified disparate impact on a protected class. *See id.* at 530-546.

Proof of discrimination based on disparate impact proceeds through a three-step burden-shifting analysis. *See* 24 C.F.R. 100.500(c). Plaintiffs first must make a *prima facie* showing that a challenged practice "caused or predictably will cause a discriminatory effect." 24 C.F.R. 100.500(c)(1). If they succeed, defendants then must prove that the "challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests." 24 C.F.R. 100.500(c)(2). If defendants meet this burden, plaintiffs nevertheless may prevail by proving that defendants' interest in "the challenged practice could be served by another practice that has a less discriminatory effect." 24 C.F.R. 100.500(c)(3).

*Inclusive Communities* cited 24 C.F.R. 100.500(c) and identified certain "safeguards" tracking the rule's approach that ensure that disparate-impact liability targets only "artificial, arbitrary, and unnecessary barriers." 576 U.S. at 527, 544 (citation omitted). In particular, (1) the plaintiff must show "robust causality" between a challenged policy and its discriminatory effect; (2) the defendant must have an opportunity to "state and explain the valid interest served by" the policy; and (3) the plaintiff may show there is "an available alternative . . . practice that has less disparate impact and serves the [defendant's] legitimate needs." *Id.* at 527, 533, 541-543 (first alteration in original) (citation omitted).

### B. Factual and Procedural Background

1. Plaintiffs are Black homeowners or residents of Cuyahoga County, Ohio, whose properties receive water from the City of Cleveland's Division of Water (Cleveland Water). Compl., R.1, PageID# 6, 29.[2] Plaintiffs filed a putative class action against the City raising

[2] "R.__, PageID# __" refers to the docket entry and page number of documents filed in the district court. "Br. __" refers to the internal pagination of the City's opening brief.

four claims, including a disparate-impact claim under the FHA, 42 U.S.C. 3604(a). *Id.* at PageID# 32-37.

In that claim, plaintiffs challenge Cleveland Water's policy of converting certain unpaid water bills to tax liens, known as water liens, twice yearly. Compl., R.1, PageID# 4, 12-13. Water liens imposed on plaintiffs' homes enable the county to initiate a foreclosure action or sell the lien to a third party, which may foreclose. *Id.* at PageID# 13. Plaintiffs allege that water liens diminish their home equity and put them "at risk of foreclosure and eventual eviction." *Id.* at PageID# 4. They also allege that the water-lien policy disproportionately results in liens in Black neighborhoods as compared to white neighborhoods, effectuating a "disparate impact . . . on Black residents [that] exists independent of income." *Id.* at PageID# 5. Plaintiffs claim that this policy makes dwellings unavailable because of race in violation of Section 3604(a). *Id.* at PageID# 32.

2. The district court denied the City summary judgment. Summ. J. Order, R.92, PageID# 4774-4820. The court held that placement of a water lien falls within the scope of Section 3604(a)'s catchall phrase and that plaintiffs produced sufficient evidence to proceed to trial on their

disparate-impact claim under the three-part framework drawn from *Inclusive Communities*. *See id.* at PageID# 4779-4805.

The district court also certified three classes, including a "Water Lien Class" composed of "all Black homeowners or residents in Cuyahoga County" whose property was subject to a water lien. Certification Order, R.93, PageID# 4823, 4851. As relevant here, the court held that (1) plaintiffs' FHA claim involves questions of law or fact that are "common" to the Water Lien Class, Fed. R. Civ. P. 23(a)(2); and (2) those common questions "predominate" over questions "affecting only individual [class] members," Fed. R. Civ. P. 23(b)(3). Certification Order, R.93, PageID# 4829-4831, 4841-4848.

In making these determinations, the district court rejected the City's argument that individual questions would dominate in evaluating whether the liens make plaintiffs' housing "unavailable" under Section 3604(a). The court explained that the statute applies to "a broad range of activities that have the effect of denying housing opportunities" and "covers activities other than the purchase or rental of homes." Certification Order, R.93, PageID# 4845 (quoting *Michigan Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 344 (6th Cir. 1994), and

collecting cases). The court concluded that the "mere assessment of the water lien . . . has the effect of making housing unavailable" to each class member, regardless of whether foreclosure or other separate harm results. *Id.* at PageID# 4846.

"Having established that [p]laintiffs' claims are encompassed by the FHA," the district court also held that the disparate-impact inquiry presents a "common question" that "predomina[tes]." Certification Order, R.93, PageID# 4846. That question—"whether [d]efendant's disproportionate assessment of water liens on Black homeowners" violates the FHA—is answered using the same "three-step burden-shifting framework" for the entire class, the court explained. *Id.* at PageID# 4846. That class members might have different damages did not defeat the predominance of the common liability question, the court ruled. *Id.* at PageID# 4846-4848.

3. This Court granted the City permission to appeal the class-certification decision. 5/7/24 Order, No. 23-3090; Fed. R. Civ. P. 23(f).

## SUMMARY OF ARGUMENT

If this Court reaches the question, it should hold that the district court correctly concluded that the placement of water liens can "make"

housing "unavailable" within the meaning of 42 U.S.C. 3604(a)'s catchall phrase, even absent foreclosure or another separate harm. The FHA accordingly bars race discrimination in the issuance of such liens, whether through intentional discrimination or through policies that have an unjustified disparate impact.

That interpretation of the statute follows from the plain text of Section 3604(a)'s catchall phrase and the case law interpreting it. Longstanding precedents of this and other courts establish that the statute reaches a wide range of housing practices, including those that occur after housing is acquired and function as precursors to its loss. Water liens can be tools for the dispossession of property through foreclosure and thus can fall within Section 3604(a)'s scope, even if foreclosure proceedings are never instituted.

While the City—echoed by its amici—claims that this conclusion will contribute to "dramatically expand[ing] the scope of disparate-impact liability" under the FHA (Br. 1-2), the City conflates two distinct questions—(1) whether Section 3604(a) reaches a challenged practice and (2) whether that practice is discriminatory, including under the rigorous three-part burden-shifting framework for disparate-impact

claims. Courts answer these questions through separate inquiries that together test whether a claim may proceed consistent with the text and design of the FHA.

## ARGUMENT

### The placement of a lien can make housing unavailable within the meaning of Section 3604(a)'s catchall phrase.

If this Court reaches the issue, it should hold that the imposition of a water lien can fall within the scope of the FHA, even if foreclosure does not ultimately result. In conducting its analysis of this issue, the district court correctly distinguished between questions of statutory coverage and disparate impact—questions that serve different functions in the inquiry into whether a claim is meritorious. And the court faithfully followed Section 3604(a)'s text and the case law interpreting it to reject the City's argument that a water lien can never, on its own, violate the statute, even if it is imposed for racially discriminatory reasons.

#### A. Whether Section 3604(a) reaches a challenged practice and whether that practice is discriminatory are separate questions.

A court must first "address the scope" of the FHA "before advancing to the merits of [a] discrimination claim." *Michigan Prot. &*

*Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 345 (6th Cir. 1994); *see also, e.g.*, *Bloch v. Frischholz*, 587 F.3d 771, 775-776 (7th Cir. 2009) (en banc) (acknowledging the distinct issues of statutory coverage and proof of discrimination). Unless a challenged activity "falls within the scope of a federal statute," the existence of discrimination in that practice is "not illegal." *Babin*, 18 F.3d at 345-346.

Thus, a court considering a claim under Section 3604(a) initially must consider whether a challenged practice amounts to a "refus[al] to sell or rent" (or negotiate for) housing or whether it falls within the Section's catchall phrase, "otherwise make unavailable or deny." If it does, then the court must address whether there is "sufficient evidence of discrimination" in the defendant's execution of that practice to establish liability. *Bloch*, 587 F.3d at 775-776. Discrimination can be shown through proof of discriminatory intent or evidence of a practice's unjustified discriminatory effect on a protected group. *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 527-546 (2015); *see also, e.g.*, *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007).

Answering the threshold question—whether a practice falls within Section 3604(a)'s scope—requires interpreting the statutory language and assessing the record. Some activities are plainly covered by the statute, such as denying a rental application or refusing to negotiate with a prospective buyer. Others, however, require analyzing the meaning of the catchall phrase and whether the allegations or evidence show that the activities fall within it. In *Babin*, for example, this Court first considered which practices are among the "broad range of activities" covered by the phrase "otherwise make unavailable." 18 F.3d at 344-345.[3] It then addressed whether the challenged conduct—neighbors pooling resources to buy a house that a state agency sought to lease for individuals with disabilities—was actionable. *Id.* at 345; *see also, e.g.*, *Bloch*, 587 F.3d at 778-779 (similar analysis).

If a court finds that Section 3604(a) reaches a challenged practice, it then assesses whether plaintiffs have put forth adequate allegations or evidence of discrimination. *Inclusive Communities* discussed the

[3] *Babin* addressed the phrase "otherwise make unavailable or deny" in 42 U.S.C. 3604(f)(1), which prohibits discrimination based on disability using language similar to Section 3604(a).

parameters for cases proceeding under a disparate-impact theory, which aims to remove "artificial, arbitrary, and unnecessary barriers" without displacing "valid governmental policies." *Inclusive Communities*, 576 U.S. at 540 (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).

*Inclusive Communities* instructs courts to probe whether a policy actually causes a disparate impact, whether the policy serves a valid interest, and whether the policy's aims may be achieved in a less discriminatory manner. *See* 576 U.S. at 540-544. This rigorous approach to disparate-impact liability aligns with the burden-shifting approach in HUD's discriminatory-effects regulation, 24 C.F.R. 100.500(c)(1)-(3). These considerations "ensur[e] that disparate-impact liability is properly limited" by giving "leeway" to the assertion and attainment of "valid interest[s]" and preventing liability "for racial disparities [defendants] did not create." *Inclusive Communities*, 576 U.S. at 541-542.

Thus, this Court should reject any invitation by the City (or its amici) to narrow Section 3604(a)'s scope when plaintiffs pursue a disparate-impact claim. *See, e.g.*, Br. 1-2, 20 & n.7. Relatedly, this

Court should dismiss the City's and its amici's fears that if this Court decides that a given practice is actionable, then it necessarily will be unlawful. Rather, holding that the statute covers a practice resolves only a threshold inquiry; to establish liability, plaintiffs must also show that the practice is discriminatory. Indeed, as explained in Part B, Section 3604(a) reaches a range of everyday practices, such as mortgage lending and insurance sales. Entities engaged in those practices remain free to conduct their business, so long as they do it in a non-discriminatory manner.

### B. Section 3604(a)'s prohibition on discriminatory practices that make housing unavailable is broad and reaches precursors to housing loss.

Congress used broad terms in Section 3604(a)'s catchall phrase to effectuate its goal of eradicating discrimination in housing. This Court's and other circuits' precedents interpreting that text establish that the catchall phrase captures post-acquisition activities that precipitate the loss of housing.

#### 1. Section 3604(a) reaches a wide range of activities that affect housing opportunities.

The FHA "broadly prohibits discrimination in housing throughout the Nation." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 93

(1979); *see also* 42 U.S.C. 3601 (Congress's purpose in enacting the FHA was to implement a "policy . . . to provide . . . for fair housing throughout the United States"). Like comparable statutes barring employment discrimination, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, the FHA was meant "to eradicate discriminatory practices within a sector of our Nation's economy." *Inclusive Communities*, 576 U.S. at 539 (citing 42 U.S.C. 3601 and H.R. Rep. No. 711, 100th Cong., 2d Sess. 15 (1988)). In light of the statute's "broad and inclusive" language and its expansive purpose, the Supreme Court has explained that its terms require a "generous construction." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (quoting *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972)).

As this Court has explained, "Congress intended [Section] 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class." *Babin*, 18 F.3d at 345. This is evident in Section 3604(a)'s text, which enumerates three categories of prohibited discriminatory conduct. The statute makes it unlawful to discriminatorily (1) "refuse to sell or rent" housing,

(2) "refuse to negotiate for the sale or rental of" housing, or (3) "otherwise make unavailable or deny" housing. While the first two categories identify specific prohibited conduct, the third category, "otherwise make unavailable or deny," is a "results-oriented phrase." *Inclusive Communities*, 576 U.S. at 535. This "catchall phrase" captures activities that result in "consequences" akin to the denial of housing but that do so "in a different way or manner." *Id.* at 534-535 (quoting *Otherwise*, *Webster's Third New Int'l Dictionary* 1598 (1971)).

Not surprisingly, this Court and others have understood Section 3604(a)'s catchall phrase to apply to a wide array of activities, performed by a variety of actors, so long as those activities "directly affect the availability of housing." *Babin*, 18 F.3d at 344. The statute reaches well beyond the interaction between buyer and seller (or landlord and tenant) to cover practices such as homeowner's insurance denials, local planning and land-use decisions, home appraisals, racial steering, and mortgage redlining. *See, e.g.*, *Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205, 1208 (9th Cir.), *as amended* (Apr. 30, 2010) (homeowner's insurance); *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1542-1543 (11th Cir. 1994) (zoning for public housing); *Hanson v.*

*Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986) (appraisals); *United States v. City of Parma*, 661 F.2d 562, 570-576 (6th Cir. 1981) (policy, permitting, and land-use decisions around public housing); *United States v. Mitchell*, 580 F.2d 789, 791 (5th Cir. 1978) (racial steering); *Laufman v. Oakley Bldg. & Loan Co.*, 408 F. Supp. 489, 493 (S.D. Ohio 1976) (mortgage lending).

HUD's regulation implementing Section 3604(a) confirms the statute's application to a broad range of discriminatory and segregative practices by brokers, agents, landlords, and their employees, as well as discriminatory practices in the provision of municipal services, insurance, and land-use policy. *See* 24 C.F.R. 100.70(d)(1)-(5) (listing forms of prohibited conduct).

### 2. Post-acquisition discrimination falls within Section 3604(a).

The City's chief argument about Section 3604(a)'s scope is that its catchall phrase reaches only "actions directly impacting a plaintiff's ability to locate or secure housing"—not practices that occur "*after* the owner has acquired a property." Br. 11. This Court should reject this stunted interpretation, as the broad catchall phrase plainly reaches *any* activity that makes housing unavailable, before or after its acquisition.

a. Discerning the reach of Section 3604(a)'s catchall phrase requires "[t]ethering" it to both "the specific context" in which it appears "and the broader context of the statute as a whole." *Fischer v. United States*, 144 S. Ct. 2176, 2183, 2185 (2024) (citation omitted). Regarding the specific context, the prohibitions on discriminatorily refusing to "sell or rent" or to "negotiate for the sale or rental of" a dwelling precede the phrase "otherwise make unavailable or deny." 42 U.S.C. 3604(a). Refusals to sell or rent are actions that deprive a person of a particular dwelling, similar to the meaning of "unavailable" in the definitions the City cites: "not available," "incapable of being used," or "not possible to get or use." Br. 14-15 (quoting *Oxford English Dictionary*, https://perma.cc/48GL-DJTR, and *Merriam-Webster Dictionary.com*, https://perma.cc/4ZDR-BZTR).

As the Supreme Court explained in *Inclusive Communities*, the statutory term "otherwise" extends Section 3604(a)'s reach to acts that achieve "consequences" similar to the deprivation of housing caused by the refusal to sell or rent, but "in a different way or manner." 576 U.S. at 534-535 (quoting *Webster's Third New Int'l Dictionary* 1598 (1971)). The catchall phrase thus plainly reaches acts that deprive a person of

housing by taking it away—not only those that thwart housing acquisition. This reading, which firmly ties the catchall phrase to the terms that precede it, comports with the interpretive canons that the City invokes, *noscitur a sociis* and *ejusdem generis*. *See* Br. 15-16.[4]

The statutory context also supports understanding the catchall phrase to capture post-acquisition discrimination. Congress enacted the FHA to achieve "fair housing" nationwide—a sweeping goal. 42 U.S.C. 3601. Construing the catchall phrase to reach discriminatory acts that deprive a person of housing after it is acquired, rather than cutting off protection at the point of sale or rental, advances that goal.

A narrower interpretation might mean that prospective tenants, but not current ones, could challenge a landlord's discriminatory decision to shutter an apartment building; or that prospective buyers might be able to sue over insurance redlining while owners seeking to renew their insurance policies could not. *Cf. 2922 Sherman Ave.*

---

[4] The *noscitur a sociis* canon instructs that "the meaning of an unclear word or phrase . . . should be determined by the words immediately surrounding it," while *ejusdem generis* holds that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Black's Law Dictionary* (12th ed. 2024).

*Tenants' Ass'n v. District of Columbia*, 444 F.3d 673, 685 (D.C. Cir. 2006) ("Telling the tenants either that their 'occupancy . . . is . . . prohibited' or that they must 'seek alternative housing' certainly qualifies as making the buildings 'unavailable' under the FHA."); *United Farm Bureau Mut. Ins. Co. v. Metropolitan Hum. Rels. Comm'n,* 24 F.3d 1008, 1016 (7th Cir. 1994) ("The [FHA] applies to the discriminatory denial of insurance as well as the discriminatory refusal to renew insurance that effectively precludes ownership of housing on the basis of race."). The statute should not be construed to draw such an arbitrary line.

b. Several courts of appeals have held that Section 3604(a)'s catchall phrase reaches post-acquisition discrimination. As the Seventh Circuit explained in *Bloch*, "Section 3604(a) is designed to ensure that no one is denied the right to live where they choose for discriminatory reasons." 587 F.3d at 776 (citation omitted). "Prohibiting discrimination at the point of sale or rental but not at the moment of eviction would only go halfway toward ensuring availability of housing." *Ibid.* Because the latter outcome "clearly could not be what Congress had in mind," the court concluded that Section "3604(a) may reach post-

acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant." *Ibid.* (addressing condo association's allegedly discriminatory conduct toward unit owners).

This Court and other courts of appeals similarly have understood Section 3604(a) to reach conduct that deprives a person of already-acquired housing. *See, e.g.*, *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1223 (11th Cir. 2016) (notices to cure and non-renewal of lease); *2922 Sherman Ave. Tenants' Ass'n*, 444 F.3d at 685 (D.C. Cir.) (notice prohibiting occupancy by building's current residents); *Cox v. City of Dallas*, 430 F.3d 734, 742 (5th Cir. 2005) (eviction or constructive eviction); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1354 (6th Cir. 1995) (cancellation or non-reinstatement of homeowner's insurance policies); *see also, e.g.*, *Castillo Condo. Ass'n v. HUD*, 821 F.3d 92, 98 (1st Cir. 2016) (denial of reasonable accommodation to condo owner).

The City lacks support for its contrary position. Its citations (Br. 16-17) to *Bloch* and earlier Seventh Circuit decisions fall short, as *Bloch* squarely held that Section 3604(a) *does* reach post-acquisition conduct. The other appellate decisions the City cites (Br. 16) also are unavailing. Each concluded that practices were not actionable because they were

too attenuated or distinct from the acquisition or retention of housing, not specifically because they concerned already-acquired housing. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 192 (4th Cir. 1999) (placement of a highway); *Clifton Terrace Assocs., Ltd v. United Technologies Corp.*, 929 F.2d 714, 719 (D.C. Cir. 1991) (maintenance of apartment's elevators).

### 3. Actions that precipitate the denial or loss of housing can make housing unavailable under Section 3604(a).

The City also argues that the district court failed to consider whether its practices have a sufficiently "direct[] impact" on housing to render it "unavailable" within the meaning of Section 3604(a). Br. 19. This Court should hold, in accordance with its precedent, that the statute's catchall phrase encompasses acts that precipitate the denial or loss of housing.

a. Both Section 3604(a)'s text and the FHA's framework support interpreting its catchall phrase to reach acts that can result in the denial or loss of housing. As explained above, pp. 17-18, the catchall phrase's text encompasses activities that have consequences similar to

refusing to sell or rent a dwelling but do so in a different manner—easily reaching activities precipitating the deprivation of housing.

The statutory context supports such an interpretation. The FHA serves Congress's express and sweeping goal of achieving "fair housing" nationwide. 42 U.S.C. 3601. It is implausible that Congress designed Section 3604(a) to bar discrimination in the sale and rental of housing while sanctioning discrimination in acts *leading to* the deprivation of housing. Such a construction would render Section 3604(a) a mere half measure. By barring discrimination in *any* activity that "make[s] unavailable or den[ies]" housing, 42 U.S.C. 3604(a), Congress thus sought to reach precursors to housing loss. *See Hunt*, 814 F.3d at 1223 ("A defendant need not make it impossible for a person to occupy a dwelling to make housing unavailable.").

The statute's remedies provision underscores Congress's goal of striking at the entire spectrum of housing discrimination. Congress granted any "aggrieved person" the right to sue over "a discriminatory housing practice" that has already happened or is "about to occur." 42 U.S.C. 3602(i)(1)-(2), 3613. As one court has explained in holding that discrimination in the provision of property insurance is actionable,

"[n]othing in the FHA requires that before filing suit plaintiffs must . . . lose their home," which "would directly contravene the purposes of the FHA." *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1, 6 (D.D.C. 1999).

b. Ample precedent confirms that the catchall phrase reaches practices that precipitate the deprivation of housing. In *Babin*, this Court explained that the phrase captures "a broad range of activities that *have the effect* of denying housing opportunities" to individuals. 18 F.3d at 344 (emphasis added). The Court clarified, however, that this did not include "*any* action that results in the unavailability of housing . . . no matter how attenuated," which would sweep in "normal economic competition"—a result unsupported by the statutory text or legislative history. *Id.* at 345. Thus, this Court concluded that the provision did not reach neighbors who pooled resources to buy a property proposed for use by individuals with disabilities. The Court reasoned that Congress did not "say that every purchaser or renter of property" is potentially liable; rather, the statute "was designed to target those who owned or disposed of property, and those who, in practical effect, assisted in those transactions of ownership and disposition." *Id.* at 345-346.

Soon after *Babin*, this Court confirmed that activities that "directly affect" the availability of housing include those that precipitate its denial or loss. *Cisneros*, 52 F.3d at 1357-1358. In *Cisneros*, this Court addressed a challenge to HUD's regulation of homeowner's insurance policies. *Id.* at 1354 (citing 24 C.F.R. 100.70(d)(4)). HUD considered insurance redlining to make housing "unavailable" because holding property and hazard insurance usually is a condition for obtaining a mortgage. *Ibid.* (citation omitted). This Court agreed, concluding that "the availability of property insurance has a direct and immediate [e]ffect on a person's ability to obtain housing." *Id.* at 1360. *Cisneros* therefore makes clear that steps toward the deprivation of housing "directly" affect housing availability.

Other appellate courts have reached similar conclusions. The Seventh and Ninth Circuits have applied the same reasoning as *Cisneros* to reject challenges to HUD's regulation of discriminatory property-insurance practices, connecting the dots between insurance, a mortgage, and a purchase. *See NAACP v. American Fam. Mut. Ins. Co.*,

978 F.2d 287, 297 (7th Cir. 1992); *Ojo*, 600 F.3d at 1208.[5] The Fifth Circuit used comparable reasoning in applying the catchall phrase to discriminatory home appraisals, concluding that undervaluations might cause purchasers to "reduce their offers or look elsewhere" to obtain full financing, which "effectively" precludes "fair market" real-estate transactions. *Hanson*, 800 F.2d at 1383. And the Eleventh Circuit held that Section 3604(f)(1)'s similarly worded catchall phrase reaches intermediate steps "that would lead to eviction but for an intervening cause"—such as a landlord's service of a notice of noncompliance and opportunity to cure. *Hunt*, 814 F.3d at 1223.

Many district courts likewise have construed the catchall phrase to reach a wide range of practices that precipitate the deprivation of housing, such as predatory lending and the non-renewal of liability insurance to group-home proprietors. *See, e.g.*, *Pitchford v. American Title Co.*, No. 04-2743, 2007 WL 9706252, at *4 (W.D. Tenn. Mar. 29,

[5] One court of appeals has held that the FHA does not apply to homeowner's insurance, but it did so prior to HUD's contrary 1989 rule. *See Mackey v. Nationwide Ins. Companies*, 724 F.2d 419, 423-425 (4th Cir. 1984). This Court declined to follow *Mackey* in *Cisneros*, 52 F.3d at 1357-1360.

2007) (Donald, J.) (concluding that "discrimination in home improvement and debt consolidation lending" may make housing unavailable because "the burden of the debt may ultimately lead to foreclosure and the ultimate loss of the borrower's home");[6] *Hargraves v. Capital City Mortg. Co.*, 140 F. Supp. 2d 7, 20 (D.D.C. 2000) (holding that "predatory practices," like "reverse redlining," "can make housing unavailable by putting borrowers at risk of losing the property which secures their loans"); *see also, e.g.*, *Nevels v. Western World Ins. Co.*, 359 F. Supp. 2d 1110, 1117-1120 (W.D. Wa. 2004) (non-renewal of liability insurance for proprietors of group homes); *Wai*, 75 F. Supp. 2d at 6.

### C. Water liens can fall within Section 3604(a)'s scope if they are precursors to housing loss.

Under the foregoing authorities establishing that precursors leading to housing loss "directly affect" housing availability, it follows that a municipality's imposition of water liens can fall within Section 3604(a)'s scope. The City's citations to inapposite cases in the Takings

---

[6] The City argues that the district court should not have relied on *Pitchford* because it was decided under Section 3604(b). Br. 20-21. While *Pitchford* references Section 3604(b) in disposing of the plaintiffs' claims (for failure to allege discrimination), its relevant analysis follows the quotation of Section 3604(a)'s text and discussion of cases construing the catchall phrase, such as *Babin*. 2007 WL 9706252, at *4.

Clause context do not compel a contrary conclusion. In addition, the City (and its amici) err in suggesting that the FHA's applicability to a given housing activity—here, the imposition of water liens—depends on whether plaintiffs have brought a disparate-treatment claim as opposed to a disparate-impact claim.[7]

1. The United States takes no position on the factual question of whether the City's imposition of water liens makes housing unavailable with the meaning of the FHA on this record. But the City is incorrect that the imposition of water liens, standing alone, can never make housing unavailable. Quite the opposite, a municipality's practice of assessing water liens may be a significant step that leads to housing loss.

Here, according to the district court, the City assesses liens on certain properties twice yearly based on the amount and duration of the

[7] The City briefly suggests—but does not meaningfully argue—that it should not be held liable because *other actors* have the authority to assess fees or foreclose on properties subject to water liens. *See* Br. 2, 6, 21. Both Section 3604(a)'s text, which is written in the passive voice, and the authorities applying it to a range of practices (*see* pp.15-16, *supra*) make clear that any actor that makes housing unavailable may be held liable.

water debt, and those liens permit eventual foreclosure by the county or a third party. *See* Certification Order, R.93, PageID# 4822, 4843; Summ. J. Order, R.92, PageID# 4775, 4788; *see also* Ohio Rev. Code Ann. §§ 743.04; 5721.10, 18, 31 and 37 (West 2024). The court also described evidence in the record that properties with water liens are "15 times" more likely than those without to experience municipal tax foreclosure, and that the liens carry "penalties, fees, and interest, which . . . must be paid in full to avoid a municipal foreclosure." Summ. J. Order, R.92, PageID# 4783-4784.

A municipality's imposition of such water liens, standing alone, can have the "effect of making housing unavailable" and thus fall within Section 3604(a)'s scope. Certification Order, R.93, PageID# 4846. As explained above, this Court has required that a challenged practice "directly" affect "the availability of housing," *Babin*, 18 F.3d at 344, and its decision in *Cisneros* confirms that precursors to housing denials or losses have the requisite "direct connection," 52 F.3d at 1359.

Specifically, *Cisneros* concluded that the denial of property insurance is within the statutory scope because it is a predicate act that may set in motion a causal chain that results in the denial of housing—

in the Seventh Circuit's words, "[n]o insurance, no loan; no loan, no house." *American Fam. Mut. Ins. Co.*, 978 F.2d at 297; *see also Cisneros*, 52 F.3d at 1360 ("the availability of property insurance has a direct and immediate [e]ffect on a person's ability to obtain housing"). The placement of a water lien similarly can set in motion a process toward foreclosure and eviction.

The imposition of water liens is quite different from the conduct that *Babin* held was not actionable—neighbors pooling money to purchase a property. *Babin* determined that such conduct was an act of "normal economic competition" that was "attenuated" from making housing unavailable. 18 F.3d at 344-345. A lien, by contrast, may be a tool for the dispossession of property and directly affects the homeowner's interest in and control of it. A municipality's imposition of a lien thus plainly can "assist" in "transactions of ownership and disposition" of housing. *Id.* at 345.

Decisions holding that predatory lending and reverse redlining are actionable further illustrate that housing unavailability can arise from predicate conduct that sets a homeowner down a path to foreclosure and eviction. *See*, *e.g.*, *Pitchford*, 2007 WL 9706252, at *4; *Hargraves*, 140

F. Supp. 2d at 20. These examples also demonstrate that activities that impose an overwhelming financial burden on a homeowner may make housing unavailable. *See ibid.*; *see also Nevels*, 359 F. Supp. 2d at 1117-1120.

That the placement of a lien does not *ensure* foreclosure and eviction—and that intervening developments may prevent that outcome, such as payment of the delinquent debt—does not necessarily render the practice too attenuated from housing loss. As the examples above make clear, courts recognize that predicate steps toward a denial or loss of housing can make that housing "unavailable" within the meaning of Section 3604(a), even if those outcomes are avoided. *See Hunt*, 814 F.3d at 1223. As in other analogous legal contexts, a plaintiff's avoidance of an ultimate outcome that is adverse to her does mean she cannot challenge practices encountered along the way as discriminatory. *See Connecticut v. Teal*, 457 U.S. 440, 443 (1982) (affirming Title VII judgment for plaintiffs who challenged a promotional test that had a disparate impact on Black employees even though the "bottom line" result of the promotion process was racially proportionate).

2. None of the cases the City cites for the proposition that liens cannot make housing unavailable arises under the FHA. *See* Br. 17-18 (citing *HARR, LLC v. Town of Northfield*, 423 F. Supp. 3d 54 (D. Vt. 2019); *First Atlas Funding Corp. Through Kersting v. United States*, 23 Cl. Ct. 137 (U.S. Ct. Cl. 1991); and *Cowell v. Palmer Twp.*, 263 F.3d 286 (3d Cir. 2001)). Each nonbinding decision presents the same, distinct question: whether a lien imposed by the government constitutes a taking of real property for public use for which the property owners are constitutionally entitled to compensation. And each court explained that a taking requires an impact akin to a physical invasion, a complete deprivation of the use or access of property, or the destruction of a property's value. *See HARR*, 423 F. Supp. 3d at 63-64; *First Atlas*, 23 Cl. Ct. at 139-140; *Cowell*, 263 F.3d at 291.

It is thus unsurprising that these courts concluded that a lien—which does not deprive an owner of the present use of a property—does not constitute a taking. But this does not shed light on the question here: whether the City's liens make housing unavailable within the meaning of a statutory provision that reaches "a broad range of activities that have the effect of denying housing opportunities," *Babin*,

18 F.3d at 344, in service of a sweeping statutory goal of achieving "fair housing" nationwide, 42 U.S.C. 3601. Indeed, the City cites no authority suggesting that a takings analysis plays a role in interpreting Section 3604(a).

3. Finally, the City's suggestion, echoed by their amici, that the district court should have analyzed Section 3604(a)'s scope differently because plaintiffs proceed under a disparate-impact theory lacks merit. *See* Br. 2, 5-7, 20 n.7. As explained in Part A, whether the statute reaches a practice and whether that practice gives rise to disparate-impact liability in a given case are distinct questions.

Nor does the fact that a claim is "[n]ovel" or implicates a commonplace practice (Br. 2-4) require deviation from the normal mode of analysis. Indeed, the claim before the Supreme Court in *Inclusive Communities* was not in the "heartland of disparate-impact suits" and instead presented "a novel theory of liability" relating to the "allocati[on of] tax credits for low-income housing." 576 U.S. at 539-541. But *Inclusive Communities* held that the usual disparate-impact analysis properly tests even such a claim.

Moreover, as noted in *Inclusive Communities*, Congress included three specific exceptions to disparate-impact liability in the FHA. *See* 576 U.S. at 537-538 (citing 42 U.S.C. 3605(c) (real-estate appraisers' consideration of factors other than protected characteristics); 42 U.S.C. 3607(b)(1) (reasonable maximum-occupancy limits); 42 U.S.C. 3607(b)(4) (exclusion of individuals with drug convictions from housing)). None pertains to water liens or other utility practices. Inferring other categorial limitations on or exceptions to disparate-impact liability where Congress did not see fit to create them would undermine the FHA's aim to "eradicate discriminatory practices within a sector of our Nation's economy." *Id.* at 539. As this Court has explained, "[n]othing in the text of the FHA instructs us to create practice-specific exceptions" rather than proceeding with the ordinary burden-shifting inquiry. *Graoch Assocs.*, 508 F.3d at 375.

The district court thus properly disaggregated the questions of whether Section 3604(a) applies to the water-lien policy and whether that policy gives rise to disparate-impact liability. While the City and its amici claim to take issue with the court's handling of the former issue, in fact their concerns take aim at the latter. The disparate-

impact analysis is where arguments about the importance of water liens as a debt-recovery tool belong. But the district court's handling of that issue at summary judgment is not before this Court in this interlocutory class-certification appeal, and the City will have a further opportunity to develop those arguments on remand.[8]

---

[8] Should this Court conclude that the water-lien policy is beyond Section 3604(a)'s scope, plaintiffs may pursue on remand an alternative theory: that the policy falls under Section 3604(b)'s prohibition on discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." The district court declined to reach plaintiffs' arguments based on Section 3604(b), having found that the claim may proceed under Section 3604(a). Summ. J. Order, R.92, PageID# 4785.

## CONCLUSION

If this Court reaches the issue, it should hold that the imposition of water liens can make housing "otherwise unavailable" under Section 3604(a).

Respectfully submitted,


DAMON SMITH
General Counsel

SASHA SAMBERG-CHAMPION
Deputy General Counsel for
Enforcement and Fair Housing

WILLIAM F. LYNCH
Assistant General Counsel for
Fair Housing Compliance

JULIA DYKSTRA
Trial Attorney
Department of Housing and
Urban Development

KRISTEN CLARKE
Assistant Attorney General

s/ Katherine E. Lamm
TOVAH R. CALDERON
SYDNEY A.R. FOSTER
KATHERINE E. LAMM
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 616-2810

## CERTIFICATE OF COMPLIANCE

This corrected brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 6,458 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This corrected brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Katherine E. Lamm
KATHERINE E. LAMM
Attorney

Date: October 15, 2024

## CERTIFICATE OF SERVICE

On October 15, 2024, I filed this corrected brief with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

s/ Katherine E. Lamm
KATHERINE E. LAMM
Attorney

# ADDENDUM

## ADDENDUM DESIGNATING DISTRICT COURT DOCUMENTS

| **Record Entry Number** | **Description** | **PageID# Range** |
|---|---|---|
| R.1 | Complaint | 1-39 |
| R.92 | Summary Judgment Order | 4774-4820 |
| R.93 | Certification Order | 4821-4851 |
| R.102 | Order Permitting Appeal | 4921-4924 |