No. 24-3395

IN THE

# United States Court of Appeals

FOR THE SIXTH CIRCUIT

ALBERT PICKETT, JR.; KEYONNA JOHNSON; JAROME MONTGOMERY;
ODESSA PARKS; TINIYA SHEPHERD, fka Tiniya Hall, on behalf of themselves
and all others similarly situated,

*Plaintiffs-Appellees,*

v.

CITY OF CLEVELAND, OH,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CASE NO. 1:19-CV-02911

**PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

Michael J. Ruttinger (Lead Counsel)
Karl A. Bekeny
Christine M. Snyder
Ethan W. Weber
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

*Attorneys for Defendant-Appellant City of Cleveland, OH*

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................................... iii

Rule 40 Statement ............................................................................................1

Background ......................................................................................................4

Reasons for Granting Rehearing ....................................................................5

I.      The Opinion conflicts with this Court's precedent on the "rigorous analysis" required at the class certification stage. ...........................5

II.     The Panel's finding of Rule 23(b)(3) predominance, while refusing to interpret § 3604(a), conflicts with *Babin*........................................8

III.    Allegations of statutory violations should not suffice to confer Article III standing at class certification...................................................11

IV.     This appeal involves a question of exceptional importance.........................14

Conclusion .....................................................................................................16

Certificate of Compliance .............................................................................17

Certificate of Service ....................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ...............................................................................14

*Bloch v. Frischholz,*
587 F.3d 771 (7th Cir. 2009)....................................................................9

*Brown v. Electrolux Home Products, Inc.,*
817 F.3d 1225 (11th Cir. 2016)................................................................7

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ......................................................................... 5, 6, 11

*Erica P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011) ..............................................................................7, 9

*First Atlas Funding Corp. v. United States,*
23 Cl. Ct. 137 (U.S. Cl. Ct. 1991) ...........................................................9

*General Telephone Co. of Southwest v. Falcon,*
457 U.S. 147 (1982) .................................................................................5

*Hagy v. Demers & Adams,*
882 F.3d 616 (6th Cir. 2018)..................................................................11

*In re Delta Air Lines,*
310 F.3d 953 (6th Cir. 2002)....................................................................8

*In re Ford Motor Co.,*
86 F.4th 723 (6th Cir. 2023)........................................................... passim

*In re Hydrogen Peroxide Antitrust Litig.,*
552 F.3d 305 (3d Cir. 2008)......................................................................7

*In re Nissan North America, Inc. Litigation,*
122 F.4th 239 (6th Cir. 2024)................................................... 1, 2, 6, 8

*Lab'y Corp. of Am. Holdings v. Davis*,
  605 U.S. ___, 2025 WL 1583302 (2025) ...............................................................4

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................14

*Merck v. Walmart, Inc.*,
  114 F.4th 762 (6th Cir. 2024) ......................................................................... 12, 13

*Michigan Protection and Advocacy Service, Inc. v. Babin*,
  18 F.3d 337 (6th Cir. 1994) ....................................................................... 3, 8, 9, 12

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
  501 F.3d 592 (6th Cir. 2007) .................................................................................2

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) .................................................................................7

*Smith v. City of Jackson, Miss.*,
  544 U.S. 228 (2005) .............................................................................................13

*Speerly v. Gen. Motors, LLC*,
  115 F.4th 680 (6th Cir. 2024) ...............................................................................11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .............................................................................................11

*Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*,
  37 F.4th 1101 (6th Cir. 2022) ...............................................................................10

*Texas Department of Housing and Cmty. Affairs v. Inclusive Communities Project*,
  576 U.S. 519 (2015) ....................................................................................... 13, 14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ....................................................................................... 11, 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................ 1, 2, 5, 14

*Wash. v. Davis*,
  426 U.S. 229 (1976) .............................................................................................13

**<u>Statutes</u>**

42 U.S.C. § 3604(a) ....................................................................................... passim

**<u>Rules</u>**

Fed. R. Civ. P. 23 ......................................................................................... passim

Fed. R. Civ. P. 23(a)......................................................................................6

Fed. R. Civ. P. 23(b)(3)........................................................................ 4, 6, 10, 11

Fed. R. Civ. P. 23(c)(4)..................................................................................6

Fed. R. Civ. P. 23(f) .....................................................................................16

## RULE 40 STATEMENT

In the last two years, this Court has twice clarified that Rule 23 imposes a burden of *proof*, not of pleading. The decisions in *In re Ford Motor Co.*, 86 F.4th 723 (6th Cir. 2023), and *In re Nissan North America, Inc. Litigation*, 122 F.4th 239 (6th Cir. 2024), gave clear parameters for how to perform the "rigorous analysis" Supreme Court precedent requires at the class-certification stage. If there is a question of fact or law relevant to class certification, the district court "has a duty to actually decide it and not accept it as true," even if answering the question overlaps "with the merits of the underlying claims." *Ford*, 86 F.4th at 729 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

The panel's precedential June 9, 2025 decision breaks from in *In re Ford* and *In re Nissan.* It sets a different rule for when class plaintiffs allege harm from a *statutory* violation than in those cases, where the harm stemmed from a tort. While the latter require scrutiny of the plaintiffs' ability to *prove* their claims with common, class-wide evidence, *Pickett* gives a pass to plaintiffs who *allege* a common statutory violation. Op. at 9 (attached as Exhibit A).

Absent *en banc* review, the panel's decision licenses an end-run around the "rigorous analysis" requirement when plaintiffs predicate a class action on an alleged violation of a federal statute. Worse, by refusing to engage with the "merits"—*i.e.*, interpreting the statute underlying the plaintiffs' claims—the panel

1

creates a scheme in which, if a district court commits an error of law when certifying a statutory violation class, that error is effectively *unreviewable* until after a final judgment in the class's favor. Forcing a defendant to wait to contest the interpretation of a statute on which a Rule 23(b)(3) class is premised runs against decades of precedent holding that novel or unsettled legal questions are appropriate for Rule 23(f) review when they are dispositive of the class claims.

The full court should rehear this case for three reasons.

*First*, as previewed above, the opinion creates a conflict in what the "rigorous analysis" required by Supreme Court precedent mandates. The panel ignored *In re Ford* and *In re Nissan*, reverting to pre-*Dukes* precedent to hold that "the predominance requirement will be satisfied" so long as a "common question 'is at the heart of the litigation.'" Op. at 9 (quoting *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)). It then treated predominance as satisfied by the district court's finding that Plaintiffs *alleged*—again, not proved—a common statutory violation. *Id.* ("Plaintiffs have likewise presented a common question asking whether the City's 'disproportionate placement of water liens on Black homeowners and residents of Cuyahoga County violates the FHA.'").

*Second*, by passing on the "merits"—the scope of § 3604(a) of the Fair Housing Act ("FHA")—the panel ratified an expansion of FHA liability that conflicts with this Court's precedent in *Michigan Protection and Advocacy Service,*

2

*Inc. v. Babin*, 18 F.3d 337 (6th Cir. 1994). Thirty years ago, this Court rejected the theory that "any action that results in unavailability of housing for protected classes is actionable" under the FHA, "no matter how attenuated." *Id.* at 345. This Court (Batchelder, J., Gibbons, J., and McKeague, J.) granted Cleveland's 23(f) petition in part because the district court's interpretation of § 3604(a) was novel and potentially inconsistent with *Babin*. Case No. 23-0309, Doc. 19 at 3–4. Now, by functionally negating *Babin*, the panel has cleared the way for a dramatic expansion of FHA disparate-impact class actions.

*Third*, this appeal offers an opportunity to give much-needed guidance to district courts on an unanswered question imperative to class certification. The panel itself observed "[t]his Circuit has not yet resolved the question of whether all class members must have standing at the class certification stage." Op. at 13 n. 9. Deciding that now, in a case where the plaintiffs' own experts conceded that swaths of the class experienced no harm from the statutory violation they allege, would not only narrow the scope of the class in *this* case, but also assist district courts in deciding future class cases stemming from alleged statutory violations.

In short, the Opinion *weakens* Rule 23 and *expands* disparate-impact liability under the FHA. The consequences extend beyond this case. The Panel's rationale could trigger class-action lawsuits against any entity that uses liens to secure overdue debts—electric companies, sewer districts, and municipalities—across the country.

Those lawsuits will meaningfully disrupt the utilities' ability to serve their customers. By making the key legal question—whether the FHA applies to liens *at all*—functionally unreviewable until there is an adverse judgment, many utilities may be forced to settle. Windfall settlements for select class plaintiffs will in turn require changes to the utilities' cost structures, either by diminishing services or passing across-the-board rate increases on to customers. *See Lab'y Corp. of Am. Holdings v. Davis*, 605 U.S. ___, 2025 WL 1583302, at *3 (2025) (Kavanaugh, J., dissenting) ("coerced settlements" based on classes "overinflated with uninjured members" can "substantially raise the costs of doing business" and "companies in turn pass on those costs to consumers in the form of higher prices").

## **BACKGROUND**

This appeal arises from a putative class action where Plaintiffs alleged the City of Cleveland disparately impacts Black homeowners by placing water liens on their property to collect overdue balances. Although all class members had a water lien against their properties, many class members were assessed zero dollars in penalties or interest, and only a small fraction ended up in foreclosure proceedings (and even then, none of Plaintiffs' experts ever tried to assess whether Cleveland's liens *caused* those foreclosures rather than some other cause). Despite this, the District Court certified a Rule 23(b)(3) damages class for all Black homeowners with

4

a water lien. The motions panel granted the City's Rule 23(f) petition, but the merits

panel affirmed, holding:

1.      The Water Lien Class "is bound by the common question of whether"

the City's placement of water liens "violates the FHA";

2.      Plaintiffs have Article III standing through their disparate-impact FHA

claim because that "injury" is "comparable" to one rooted in the Constitution; and

3.      Appeals under Rule 23(f) "are limited to evaluating" class certification,

"not whether the cause of action is meritorious."

*See* Op. at 11, 13–14.

### <u>REASONS FOR GRANTING REHEARING</u>

**I.      The Opinion conflicts with this Court's precedent on the "rigorous analysis" required at the class certification stage.**

Recent precedent has overhauled what a "rigorous analysis" of the Rule 23

class certification factors requires. True, that language has been around 40-plus

years—since *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982),

which is tellingly the only case the Panel cites for the standard. But first in *Dukes*,

and then in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), the Supreme Court

emphasized that to conduct a "rigorous analysis" means to "probe behind the

pleadings" and not just *accept* a plaintiff's allegation that there is a common

question, but *investigate* whether there is, in fact, a common issue that can be

resolved class-wide "in one stroke." *Dukes*, 564 U.S. at 350–51; *Comcast*, 569 U.S.

at 33. This goes not just for the Rule 23(a) prerequisites, but also for Rule 23(b)(3); "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34.

This Court went a step further in the last two years, giving explicit guidance on how to perform this "rigorous analysis." *In re Ford* clarified that "[s]atisfying the Rule requires a named plaintiff to offer '[s]ignificant' evidentiary proof that he can meet" the Rule 23 criteria. 86 F.4th at 726. But *In re Ford* involved Rule 23(c)(4) issue classes; *In re Nissan* took that issue up in the context of Rule 23(b)(3) damages classes. It summarized the playing field: "Plaintiffs 'must actually *prove*—not simply plead—that their proposed class satisfies each requirement." 122 F.4th at 246. The district court "must conduct a 'rigorous analysis' to determine whether" the plaintiff has met that burden of proof. *Id.* And "[a] district court abuses its discretion by failing to do so." *Id.* (citing *Ford*, 86 F.4th at 727).

Enter *Pickett*. The Panel parrots the "rigorous analysis" language but does not follow through. Instead, it takes the same approach as the District Court, focusing on Plaintiffs' *allegation* of a common question in the form of an issue of statutory interpretation: "whether the City's 'disproportionate placement of water liens on Black homeowners and residents of Cuyahoga County violates the FHA.'" Op. at 9. It then declines to review whether Plaintiffs have "proven" that the FHA violation question could be resolved class-wide, citing the 10-year-old *Rikos* decision to dilute

6

the test into whether a FHA violation is the kind of "common question[] that *can be proved* through evidence common to the class." Op. at 10 (quoting *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 521 (6th Cir. 2015)). This set the stage for the Panel to gloss over the "merits" question—the scope of § 3604(a) of the FHA—by deeming it irrelevant to the predominance question. Op. at 14.

The Panel's shortcut is impermissible. If Rule 23 is a "burden of *proof*, not a burden of pleading," *Ford*, 86 F.4th at 729, then it does not matter whether the issue to be certified is a question of fact or law; either way, the Court has to *decide it*. The *In re Ford* court understood that: "[I]f a question of fact *or law* is relevant to [the class-certification] determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." *In re Ford*, 86 F.4th at 729 (quoting *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016)) (emphasis added). That remains true even if "this inquiry might overlap with the merits of the underlying claim." *Id.*

So what should the Panel have done differently? The predominance inquiry begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Thus "the court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 317–18 (3d Cir. 2008) (cleaned up). Accordingly, the Panel needed to engage with

7

the merits of § 3604(a) of the FHA—specifically, whether the challenged practice (water lien assessment) makes housing "unavailable." Not coincidently, that is the exact issue that this Court identified when it *granted* Cleveland's 23(f) petition. Case No. 23-0309, Doc. 19 at 3 ("The district court's class-certification decision depended in part on its conclusion that assessing water liens can make housing 'unavailable' under § 3604 of the FHA.").

By taking a different (and diluted) approach to the "rigorous analysis" in class actions rooted in an alleged statutory violation, the Panel opened an unnecessary conflict with *In re Ford* and *In re Nissan*. There is no reason to treat class actions premised on a common question of law with less scrutiny than those premised on a common question of fact. If anything, the opposite should be true. After all, this Court has long held both that errors of law are necessarily abuses of discretion, and that "[t]he case that raises a novel or unsettled question may also be a candidate for interlocutory review." *In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002). This case involves both.

## II.    The Panel's finding of Rule 23(b)(3) predominance, while refusing to interpret § 3604(a), conflicts with *Babin.*

No matter the Panel's insistence that "we have no occasion to engage in a merits-based inquiry," Op. at 15, the Panel opened a conflict with *Babin* the moment it found "predominance" satisfied. Again, the Supreme Court has directed that the predominance analysis *begins* with asking whether "the elements of the underlying

8

cause of action" can be resolved class-wide. *Halliburton*, 563 U.S. at 809. For actions under § 3604(a) of the FHA, that means starting with the statute's plain language—"otherwise makes unavailable"—and addressing whether the alleged link between assessment of water lien and housing unavailability predominates over individualized issues.

In *Babin*, this Court held that the focus of the FHA's "otherwise makes unavailable" language is not on the challenged *act*, but on the *outcome* of that act. This Court construed the phrase as signaling that the FHA reaches only those actions that "*directly affect* the availability of housing." *Babin*, 18 F.3d at 344 (emphasis added). It set a clear boundary; the FHA does *not* prohibit "*any* action that results in unavailability of housing for protected classes, *no matter how attenuated.*" *Id.* at 345 (emphases added). *Babin* thus requires courts to examine whether the act precipitates housing loss or dispossession. *See also Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009) (en banc) ("Availability, not habitability, is the right § 3604(a) protects.").

The Panel ignored record evidence that the outcome of water-lien assessment is rarely housing loss. Liens do not dispossess a homeowner or necessarily precipitate foreclosure. *See, e.g.*, *First Atlas Funding Corp. v. United States*, 23 Cl. Ct. 137, 139 (U.S. Cl. Ct. 1991) (noting a lien is "not an assertion of adverse title or an actual effort to dispossess" but rather "a means of securing a position as a creditor"). Plaintiffs never argued otherwise. Their own expert, Dr. Steil, conceded

9

that "only a small percentage" of homeowners *ever* lose their homes when they have a water lien. (R. 65-10, PageID # 1512.) Cleveland, in turn, offered undisputed expert testimony that water liens are rarely—*if ever*—the cause of foreclosure.

By basing its predominance finding only on the common act of "assessing" water liens, the Panel ignored individualized "fact of damage" questions that run rampant through the class. There are three different "damages" scenarios class members may experience related to water liens: (1) no out-of-pocket cost and no foreclosure; (2) interest and penalties paid on the lien balance; or (3) foreclosure with interest and penalties paid from the proceeds. Only the third group can connect a lien to loss of housing, as § 3604(a) requires. This is a difference in *fact* of damages that is "variable in nature and ripe for variation in application." *Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1107 (6th Cir. 2022).

This is a predominance problem for two reasons. *First*, class members with no actual damages—no penalties, no fees, and no foreclosure—should not be part of a Rule 23(b)(3) class. There is no way to separate the uninjured from the injured without mini-trials that would subsume any class trial. Again, Dr. Steil conceded that one in five class members never paid penalties and interest or went through foreclosure, meaning they have no damages. (R. 65-10, PageID # 1491.) *Second*, the damages model focuses on penalties, interest, and foreclosures. (*Id.*, PageID # 1497–1500.) But it is undisputed that the City lacks the power to assess penalties or

10

interest, does not receive those funds, and does not initiate municipal foreclosure proceedings. (*Id.*, PageID # 1483, 1494.) Thus, Plaintiffs' liability theory—the lien violates the FHA—is inconsistent with their damages case. That does not work. *Comcast*, 569 U.S. at 35–36 (rejecting the notion that "at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide" because it reduces "Rule 23(b)(3)'s predominance requirement to a nullity."). The *en banc* Court should correct these missteps.

## III.  Allegations of statutory violations should not suffice to confer Article III standing at class certification.

"Article III standing requires concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). As *Spokeo* explained and *TransUnion* refined, "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *TransUnion*, 594 U.S. at 417 (quoting *Spokeo*, 578 U.S. at 341). But Congress cannot "transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018) (citation omitted). And "[t]his Circuit has not yet resolved the question of whether all class members must have standing at the class certification stage." Op. at 13, n.9; *cf. Speerly v. Gen. Motors, LLC*, 115 F.4th 680 (6th Cir. 2024), *vacated*, 123 F.4th 840 (6th Cir.) (en banc) (argued Mar. 19, 2025).

The Panel assumed Article III injury exists based on the allegation that an FHA violation occurred: "Plaintiffs *allege* that Cleveland's water policy makes housing 'unavailable' on the basis of race" and this is "within the FHA's scope," so all class members have standing at class certification. Op. at 13 (emphasis added). That conclusion is wrong in three ways.

First, *Babin* makes clear the focus of the FHA is not the act (lien assessment), but the outcome of it (housing availability). *Babin*, 18 F.3d at 344–45; *see supra* Part II. But the Panel did not grapple with the undisputed fact that there are at least three *different* "outcomes" for class members assessed a lien—nothing, penalties and interest, or foreclosure. By assuming that placement of a lien violates the FHA, the Panel took an Article III shortcut because it *assumed* the injury was the lien. This was wrong for purposes of class certification and it was wrong for Article III. If Section 3604(a) does not cover the act (placing a lien), the Article III problem is moot because the foundation on which the Panel's standing analysis rests is no more.

Second, assuming placement of a lien violates the FHA, a disparate-impact-based statutory violation does not—without something concrete—provide a cognizable Article III injury. Based on *Merck*, the Panel held "[p]laintiffs under the Fair Housing Act have standing under Article III because Congress identified and elevated an individual harm—private discrimination in the housing market on the basis of race." *Merck v. Walmart, Inc.*, 114 F.4th 762, 779 (6th Cir. 2024). "That

12

harm," it explained relying on the Fourteenth Amendment and *Texas Department of Housing and Cmty. Affairs v. Inclusive Communities Project*, 576 U.S. 519 (2015), "is comparable to a harm found in the Constitution—racial discrimination by the government." *Id.* at 779–80 (citations omitted).

Adopting the *Merck* dicta does not overcome this problem; it exacerbates it. To start, the Constitution (specifically, the Equal Protection Clause) *does* prohibit discrimination, but only in the form of disparate treatment. *See Wash. v. Davis*, 426 U.S. 229, 242 (1976) ("[W]e have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another."). Disparate *impact* discrimination—because it lacks the intent required to violate the Equal Protection Clause—is not a harm "specified by the Constitution itself." *TransUnion*, 594 U.S. at 425. Even so, the Panel wrongly assumes Congress provided for disparate impact harm in the FHA. While Congress may "elevate" certain harms, *id.* at 425–26, it did no such thing for disparate-impact liability under the FHA. Courts and federal agencies did. *See Inclusive Cmtys.*, 576 U.S. at 534 (disparate-impact is "a novel theory of liability"); *see also Smith v. City of Jackson, Miss.*, 544 U.S. 228, 258 (2005) (O'Connor, J. concurring) ("Had Congress intended to inaugurate disparate impact liability in the ADEA, one would expect to find some indication of that intent in the text and the legislative history. There is none.").

13

There is nothing to support the notion that allegations of a disparate impact FHA violation, on its own, amount to a cognizable Article III injury. Allowing this analysis premised on dicta to become law invites "further[] error." *Inclusive Cmtys.*, 576 U.S. at 556 (Thomas, J., dissenting).

Third, a class contaminated with members who lack *any* injury—whatever the outcome of placement of a lien might be—should not be certified. Swaths of the class have no injury at all because the Panel allowed a pleading standard to suffice. Op. at 13. But *Dukes* says each class member must "possess the same interest and suffer the same injury." *Dukes*, 564 U.S. at 349. That injury must be of the same *type*. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (distinguishing between "currently injured" and "exposure-only" plaintiffs). Proving this sameness rather than just pleading it is what the "rigorous analysis" and *Lujan*'s instruction— that standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof"—require. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Any uninjured class members should be weeded out at certification.

## IV.    This appeal involves a question of exceptional importance.

Although the Panel declined to answer it, no one disputes this appeal involves a novel legal question: "whether placement of a utility lien can support an FHA claim." Case No. 23-0309, Doc. 19 at 2-3. It is an exceptionally important one; the Motions Panel recognized that "this case could have a significant effect on utilities

and related government entities throughout the country." *Id.* at 2. And this is the first *and only* case to present the question, so far. That explains why the country's two largest water industry trade associations—the American Water Works Association and the National Association of Clean Water Agencies—both filed amicus briefs urging reversal. Case No. 24-3395, Doc. 30, 45. They explained that lien-assessment policies like Cleveland's are a common tool for water providers, which have narrow margins for maintaining adequate funding, to collect on delinquent bills. So even the threat of copycat class actions could profoundly disrupt how utilities nationwide do business. And, if utilities cannot lien, their cost structures must shift, potentially making customers who *do* pay responsible for subsidizing those who do not in the form of higher across-the-board rates.

By avoiding the merits—when they did not have to—the Panel exacerbated the very problem Cleveland's amici warned about. Cleveland is not unique; many of the country's largest cities experience income inequality along racial lines as a byproduct of historic redlining. Those same cities—like New York and Philadelphia—also have utilities that rely on liens to collect overdue bills. Under this published, precedential decision, nothing prevents plaintiffs from filing copycat disparate-impact class actions across the country, since all they need is to *allege*—not prove—a violation of the Fair Housing Act. Worse, if other courts follow the

15

Panel's decision, those cities cannot defend the constitutionality of their practices until there has been a final judgment, rather than looking to a Rule 23(f) appeal.

Rule 23(f) was designed to avoid just this problem. *See* Fed. R. Civ. P. 23(f), Advisory Committee's Notes to 1998 Amendments; *see also Lab'y Corp.*, 2025 WL 1583302, at *3 (Kavanaugh, J., dissenting). The Panel could, and should, have reached the merits of this novel and exceptionally important statutory interpretation question. *En banc* review is needed to reverse the consequences of its error.

## CONCLUSION

For these reasons, the Court should grant rehearing or rehearing *en banc*.

Dated: June 23, 2025

Respectfully submitted,

/s/ *Michael J. Ruttinger*
Michael J. Ruttinger (Lead Counsel)
Karl A. Bekeny
Christine M. Snyder
Ethan W. Weber
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113
Tel:       (216) 592-5000
Fax:      (216) 592-5009
Email:    michael.ruttinger@tuckerellis.com
            karl.bekeny@tuckerellis.com
            christine.snyder@tuckerellis.com
            ethan.weber@tuckerellis.com

*Attorneys for Defendant-Appellant City of Cleveland*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with Federal Rules of Appellate Procedure 32 and 40(d)(3)(A). It contains 3,887 words, excluding parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: June 23, 2025                                       */s/ Michael J. Ruttinger*
                                                                    Michael J. Ruttinger

17

## **CERTIFICATE OF SERVICE**

I, Michael J. Ruttinger, hereby certify that I electronically filed the foregoing Petition for Panel Rehearing and Rehearing *En Banc* with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 23, 2025                                    */s/ Michael J. Ruttinger*
                                                                Michael J. Ruttinger

# EXHIBIT A

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ALBERT PICKETT, JR.; KEYONNA JOHNSON; JAROME
MONTGOMERY; ODESSA PARKS, deceased; TINIYA
SHEPHERD, on behalf of themselves and all others
similarly situated,

        *Plaintiffs-Appellees.*

    *v.*

CITY OF CLEVELAND, OHIO,

        *Defendant-Appellant.*

No. 24-3395

———————————

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cv-02911—Solomon Oliver Jr., District Judge.

Argued: January 29, 2025

Decided and Filed: June 9, 2025

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Michael J. Ruttinger, TUCKER ELLIS LLP, Cleveland, Ohio, for Appellant. Jennifer A. Holmes, NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC., Washington, D.C., for Appellees. **ON BRIEF:** Michael J. Ruttinger, Karl A. Bekeny, Christine M. Snyder, Ethan W. Weber, TUCKER ELLIS LLP, Cleveland, Ohio, for Appellant. Jennifer A. Holmes, Molly Cain, NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC., Washington, D.C., Arielle Humphries, Alexandra Sloane Thompson, Tiffani Burgess, NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC., New York, New York, Avery S. Friedman, AVERY FRIEDMAN & ASSOCIATES, Cleveland, Ohio, for Appellees. Ronald J. Tenpas, VINSON & ELKINS LLP, Washington, D.C., Philip K. Hartmann, FROST BROWN TODD, Columbus, Ohio, Bryan T. Kostura, MCDONALD HOPKINS, LLC, Cleveland, Ohio, D. Rees Alexander, Katherine E. Wenner, SQUIRE PATTON BOGGS U.S. LLP, Columbus, Ohio, Sean A. McCarter, ALBERS & ALBERS, Columbus, Ohio, Robert W. Ballenger, COMMUNITY LEGAL SERVICES, INC. OF PHILADELPHIA, Philadelphia, Pennsylvania,

No. 24-3395          *Pickett, et al. v. City of Cleveland, Ohio*          Page 2

Lawrence M. Levine, NATURAL RESOURCES DEFENSE COUNCIL, New York, New York, Olivia Wein, NATIONAL CONSUMER LAW CENTER, Washington, D.C., Lori Rifkin, IMPACT FUND, Berkeley, California, Katherine E. Lamm, Sydney A.R. Foster, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Katherine Walz, NATIONAL HOUSING LAW PROJECT, San Francisco, California, for Amici Curiae.

       CLAY, J., delivered the opinion in which GIBBONS and GRIFFIN, JJ., concurred. GIBBONS, J. (pp. 16–18), delivered a separate concurring opinion in which GRIFFIN, J., concurred.

––––––––––––––––

## OPINION

––––––––––––––––

       CLAY, Circuit Judge. Defendant City of Cleveland appeals the district court's class certification order of the "Water Lien Class" pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. The Class consists of at least 943 individuals in Cuyahoga County, Ohio, all African American, who were assessed a water lien by the City. For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

### A. Factual History

       Cleveland Water, a department of the City of Cleveland,[1] provides water services to approximately 1.5 million customers within its service area in Ohio. This includes over seventy communities across Greater Cleveland, as well as municipalities in Cuyahoga, Portage, Medina, Summit, and Geauga Counties. Though not mandated by law, Cleveland Water charges payment for water services pursuant to Ohio Rev. Code § 743.04(A) through various "user charges," including utility rates and fees. Mastracchio Report, R. 64-16, Page ID #1136. These water charges constitute Cleveland Water's "sole revenue source," and are used to support its operations, maintenance, and capital projects. Appellant Br., ECF No. 24, 4.

––––––––––––––––

[1]Cleveland Water is a "Proprietary Fund and Enterprise Fund" of the City of Cleveland, meaning that it operates like a government business and follows Generally Accepted Accounting Practices ("GAAP") to the extent that the full cost of services is recovered through customer charges and fees. Mastracchio Report, R. 64-16, Page ID #1136.

No. 24-3395          *Pickett, et al. v. City of Cleveland, Ohio*          Page 3

To collect unpaid fees, Cleveland Water places "water liens" on delinquent customer accounts.[2]  Appellant Br., ECF No. 24, 4–5.  To trigger the placement of a water lien, a customer must: (1) fall behind on a water bill for at least 180 days, and (2) owe an account balance of $300 or more.  "Between 2012 and 2020, Cleveland Water attached over 17,172 water liens to properties for unpaid water bills."  Parnell Expert Report, R. 65-15, Page ID #1732.  These water liens accumulate penalties, interest, and other fees which can place customer properties at increased risk of foreclosure and possible eviction.  *Id*.  To avoid this result, customers may enter a payment plan with Cleveland Water to recall the water lien, although the lien is re-certified if the customer breaks the payment plan.  Cleveland Water uses these lien revenues to help pay for its other expenses.

In Cuyahoga County, more water liens are assessed to properties in majority Black neighborhoods than those in majority White neighborhoods.  *See* Parnell Expert Report, R. 65-15, Page ID #1732 ("[T]he larger the percentage of African Americans living in a particular neighborhood, the larger the number and proportion of all water liens.").  Statistics show that White residents make up approximately 59% of the population of Cuyahoga County, while Black residents make up 29%.  Still, roughly 18% of water liens are placed in majority White neighborhoods, while 68% of water liens are placed in majority Black neighborhoods.  Cleveland Water does not have knowledge of a particular homeowner's race at the time of assessing a water lien.

Plaintiffs Albert Pickett, Jr., Keyonna Johnson, Jarome Montgomery, Odessa Parks,[3] and Tiniya Shepherd were residents of Cuyahoga County, Ohio, during all times relevant to this action.[4]  Plaintiffs are African American, and each of them had a water lien placed on their

---

[2]Although Cleveland Water prefers to collect delinquent water fees through the placement of water liens on customer accounts, it also has the option to pursue legal action against customers.  Ohio Rev. Code § 743.04(A). Alternatively, it is not required to do anything.  Cleveland Water temporarily suspended its water lien policy for two years during the COVID-19 pandemic.

[3]Odessa Parks is now deceased.

[4]Named Plaintiffs all experienced the effects of a water lien placed on their property by Cleveland Water. When Albert Pickett contested his water bills, "Cleveland Water denied him the opportunity for a payment plan and shut off his water."  Pls.' Class Certification Mot., R. 65, Page ID #1402.  Keyonna Johnson had at least two liens placed on her property and was denied a hearing with the City's Water Review Board, despite being unable to afford the payments.  Similarly, Jarome Montgomery had at least two liens placed on his property and was also denied a

No. 24-3395 *Pickett, et al. v. City of Cleveland, Ohio* Page 4

property by Cleveland Water that resulted in additional fees, and in some cases, water shutoffs or even foreclosure.

## II.

### A. Procedural History

On December 28, 2019, Pickett, Johnson, Montgomery, and Shepherd ("Plaintiffs" or "Named Plaintiffs") filed a class action lawsuit against Defendant City of Cleveland and Cleveland Water ("the City" or "Cleveland") under 42 U.S.C. § 3604 of the Fair Housing Act (FHA), § 4112.02(H) of the Ohio Civil Rights Act (OCRA), and the United States and Ohio Constitutions. They alleged that Cleveland's water policy disproportionately harms Black homeowners in violation of §§ 3604(a) and 3604(b) of the FHA as well as § 4112.02(H) of the OCRA. In this regard, § 3604 makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny*, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a) (emphasis added).

On September 15, 2022, Plaintiffs filed a motion for class certification requesting that the district court certify four classes of individuals. This included a group known as "the Water Lien Classes," characterized by Plaintiffs as "two classes of Black residents and homeowners in Cuyahoga County who ha[d] been obligated to pay a debt against their property pursuant to a water lien placed by Cleveland." Appellees' Br., ECF No. 48, 8. Plaintiffs sought certification under Rule 23(b)(2) for injunctive relief, as well as Rule 23(b)(3) for damages. Plaintiffs also outlined the methodology proposed by their expert, Dr. Justin Steil, to calculate an estimate of class-wide damages. In this model, Dr. Steil analyzed two data sets, including the water lien liabilities of the five named Plaintiffs as well as that for all residents in Cuyahoga County who owned properties with water liens from Cleveland Water. He ultimately determined that while individual damages may vary, the cost increase attributable to water liens was similar in both groups.

---

hearing, even after contesting the accuracy of his water bills. Montgomery's home ultimately went into foreclosure. Additionally, Tiniya Shepard experienced a water lien and had to sell another piece of real property to pay it off.

No. 24-3395          *Pickett, et al. v. City of Cleveland, Ohio*          Page 5

The City filed a motion for summary judgment, which the district court denied on September 29, 2023. While the court declined to address the application of § 3604(b), it nonetheless reasoned that the City's water liens had the potential to affect housing availability subject to § 3604(a) "by significantly increasing an individual's risk of municipal tax foreclosure," while also increasing the costs of home ownership "by imposing subsequent costs associated with the assessment of the water lien." Order, R. 92, Page ID #4784–85.

On September 30, 2023, the district court granted Plaintiffs' motion for class certification and certified the Water Lien Classes under Rules 23(b)(2) and 23(b)(3). Specifically, the district court certified the Water Lien Class as "a class of all Black homeowners or residents in Cuyahoga County who have been obligated, within the last two years, to pay debt secured by their property stemming from amounts originally owed to Cleveland Water." Order, R. 93, at Page ID #4823. The district court also determined that the class action requirements of Rule 23 were satisfied. With respect to Rule 23(b)(3)'s predominance requirement, the district court explained that Plaintiffs' claims did not require individualized proof of housing availability because they had established the common question of "whether Defendant's disproportionate assessment of water liens on Black homeowners in Cuyahoga County, under Defendant's facially neutral water lien policy, violates the FHA." *Id*. at Page ID #4846. The City timely appealed the district court's certification order.

## II.  DISCUSSION

### A.  Standard of Review

"A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). This Court will only reverse the district court's certification of the Water Lien Class if the City makes "a strong showing" that the district court's decision "amounted to a clear abuse of discretion." *Id*. "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). Importantly, we will not find an abuse of discretion in the

absence of a "definite and firm conviction" that such an error occurred.  *Id*. (quoting *Mia. Univ. Wrestling Club v. Mia. Univ.*, 302 F.3d 608, 613 (6th Cir. 2002)).

### B.  Analysis

The City objects to the district court's certification of the Water Lien Class on the basis of both 23(b)(3)'s predominance requirement and Article III standing.  It maintains that up to twenty percent of the Class did not suffer any economic injury as result of the water liens, thus depriving Plaintiffs of standing.  Under *TransUnion LLC v. Ramirez*, the City asserts that all class members must identify a concrete harm that is traceable to a water lien, such as "expenses incurred due to foreclosure, penalties, or interest."  Appellant Br., ECF No. 24, 22 (citing 594 U.S. 413, 426 (2021)).  In other words, the City attempts to argue that all class members must have a common economic harm and may not "simply point[] to a common statutory violation," such as Plaintiffs' FHA claim under 42 U.S.C. § 3604, to satisfy the predominance requirement of Rule 23(b)(3).  *See* Appellant Br., ECF No. 24, 22.  The City also argues that FHA violations of 42 U.S.C. § 3604(a) do not constitute a legally cognizable harm on the merits.

Plaintiffs argue that common issues predominate their disparate-impact claim, specifically "whether Cleveland's water lien policy violates the FHA and OCRA and whether the water lien policy has a disparate impact on Black homeowners and residents in Cuyahoga County."  *See* Appellees' Br., ECF No. 48, 36.  Plaintiffs reason that these questions predominate over individualized concerns relating to causation and damages, which may be resolved later in the litigation and do not defeat class certification at this stage.  They also defend the merits of their FHA claim against Cleveland's water policy, which derives from § 3604(a) and makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny*, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(a) (emphasis added).  Because of the disproportionate number of water liens placed on Black properties in Cuyahoga County, and the potential for fees and foreclosure, Plaintiffs argue that Cleveland's policy makes housing "unavailable" within the meaning of § 3604.  We hold that the district court did not abuse its discretion by certifying the Water Lien Class under Rules 23(b)(2) and 23(b)(3).

### 1. Rule 23(a)

To obtain class certification, Plaintiffs must first satisfy the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequate representation. *See Whirlpool*, 722 F.3d at 850. The district court addressed these requirements in depth.[5] For numerosity, there is "no strict numerical test," but "substantial" numbers will qualify, and Plaintiffs have identified "at least 943 residents who would belong to the proposed Water Lien Class." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006); Order, R. 93, Page ID #4829. We thus determine that numerosity is satisfied. *See Helwig v. Concentrix Corp.*, 345 F.R.D. 608, 619 (N.D. Ohio 2024) (noting that "a class of 40 or more members raises a presumption" of numerosity) (quoting *1 Newberg and Rubenstein on Class Actions* § 3:12 (6th ed.)).

Commonality is also satisfied, because Plaintiffs have demonstrated "a common question that will yield a common answer for the class . . . and that that common answer relates to the actual theory of liability in the case." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015). Specifically, Plaintiffs suffer according to a common theory of injury under the FHA whose answer will resolve the suit "in one stroke" for all members of the Class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Typicality exists because Plaintiffs' claims fairly encompass the claims of all unnamed class members. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Since Cleveland's water lien policy applies to the entire Water Lien Class, and all class members suffered the placement of a water lien on their personal property, all claims are "interrelated." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge").

Finally, Plaintiffs have established the adequacy of class representation because the named representatives share common interests with the unnamed interests of the Water Lien Class and appear able to "vigorously" assert those interests for all. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Rule 23(a)(4) further seeks to "uncover conflicts of interest

---

[5]Because the City has not challenged the district court's analysis of Rule 23(a) on appeal, we conduct only a cursory review of the four prerequisites of numerosity, commonality, typicality, and adequacy.

No. 24-3395                    *Pickett, et al. v. City of Cleveland, Ohio*                    Page 8

between named parties and the class they seek to represent," but we find no indication of conflicting interests or other arguments against the adequacy of representation in this matter. Plaintiffs have thus satisfied the prerequisites of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

### 2. Rule 23(b)(2)[6]

After clearing the requirements of Rule 23(a), the proposed class must also fall within one of the three types of class actions under Rule 23(b). *Amchem Prods.*, 521 U.S. at 614. Under Rule 23(b)(2), "the party opposing the class [must have] acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002) (quoting Fed. R. Civ. P. 23(b)(2)). Rule 23(b)(2) is only designed to permit classes "with homogenous interests," *id.* at 447, and applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360; *Amchem Prods.*, 521 U.S. at 614 ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples [of Rule 23(b)(2) class actions].").

In the present matter, Plaintiffs seek an injunction and declaratory judgment as to the City's water lien policy that would provide relief to each member of the Water Lien Class and is "separate from any request for monetary damages" under Rule 23(b)(3). Order, R. 93, Page ID #4841. By definition, the Class consists of "all Black homeowners or residents in Cuyahoga County" who suffered the placement of a water lien within the past two years. *Id.* at Page ID #4823. This means that the City's alleged conduct, i.e., the placement of water liens

---

[6]Notably, the City did not contest certification of the Water Lien Class under Rule 23(b)(2) before the district court. The City also did not challenge the district court's certification of the Water Lien Class under Rule 23(b)(2) in its petition for review. Instead, Defendant's appellate brief mentions Rule 23(b)(2) precisely three times and does not offer a single argument against certification on those grounds. We note that such "skeletal" treatment of an issue usually results in its waiver. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995))). However, in light of the "mandatory" nature of Rule 23(b)(2) class actions as applied to absent class members, we briefly review the district court's certification under Rule 23(b)(2) in an effort to safeguard those interests. *Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 645 (6th Cir. 2006) (noting that "potential class members do not have an automatic right to notice or a right to opt out of [a] class" certified under Rule 23(b)(2)).

disproportionately affecting Black residents in violation of the FHA, "can be enjoined or declared unlawful . . . as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. Because such a remedy would be "indivisible" in nature, *id.*, we hold that the district court did not abuse its discretion by certifying the Water Lien Class under Rule 23(b)(2).

### 3.  Rule 23(b)(3)

Under Rule 23(b)(3), the district court must find that "issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (internal quotation marks omitted). This does not mean that all elements of a claim must be subject to class-wide proof. *See In re Whirlpool Corp.*, 722 F.3d at 858. Rather, "[a] class may be certified based on a predominant common issue even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir 2020) (citation omitted)). *Whirlpool* made clear that Rule 23(b)(3)'s predominance requirement is generally satisfied "when adjudication of questions of liability common to the class will achieve economies of time and expense, . . . even if damages are not provable in the aggregate." *Id.* (quoting 722 F.3d at 850 (citation omitted)). Indeed, the important inquiry for Rule 23(b)(3) is whether a common question "is at the heart of the litigation," in which case the predominance requirement will be satisfied. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Plaintiffs have likewise presented a common question asking whether the City's "disproportionate placement of water liens on Black homeowners and residents of Cuyahoga County violates the FHA." Order, R. 93, Page ID #4842. This question impacts the whole of the Water Lien Class, defined as: "[A] class of all Black homeowners or residents in Cuyahoga County who have been obligated, within the last two years, to pay debt secured by their property stemming from amounts originally owed to Cleveland Water." *Id*. at Page ID #4823. Plaintiffs'

alleged injury, disparate impact through the City's assessment of water liens, is the same for all class members.[7]

The fact that some members of the Water Lien Class may not be eligible for damages, or may receive damages in varying amounts, does not invalidate the district court's certification of the Class based on a common question. *See Hicks*, 965 F.3d at 460; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016). For predominance, the important inquiry is whether common questions can be proven through evidence common to the Class, *see In re Whirlpool*, 722 F.3d at 858, and Plaintiffs have alleged a significant statistical disparity in the City's placement of water liens in majority Black versus White neighborhoods.[8] Because Plaintiffs' common question "presents the same essential elements of a FHA disparate-impact claim to all class members," Order, R. 93, Page ID #4846, individualized damages are secondary, and may be calculated later. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 885 (6th Cir 1997) (explaining that "the level of claimed injury may vary throughout the class—a common feature of class actions routinely dealt with at a remedial phase"); *see also Young*, 693 F.3d at 539 (noting that "the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification").

To decertify based on the existence of some questions on individual damages would undermine the very purpose of Rule 23(b)(3), which endeavors "to allow integration of numerous small individual claims into a single powerful unit." *Young*, 693 F.3d at 540 (quoting *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010)). Rather than investigating the merit of these separate claims, "the predominance inquiry must focus on common questions that *can be proved* through evidence common to the class." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 521 (6th Cir. 2015) (quoting *In re Whirlpool*, 722 F.3d at 858 (emphasis added)). "In other words, named plaintiffs must show that they will be able to prove

---

[7]The City argues that Plaintiffs' asserted injury under § 3604(a) is not sufficient to confer Article III standing, which we discuss *infra*.

[8]Between 2014 and 2018, Plaintiffs allege that 61.1% of residents living in Cuyahoga County on a Census block containing a property with a water lien were Black, whereas only 29.5% were White. The population of Cuyahoga County was approximately 60% White.

injury through common evidence, not that they have in fact proved that common injury." *Rikos*, 799 F.3d at 521.

Moreover, Plaintiffs have set forth a plan for future damages calculations through Dr. Steil's report, which "applies to the whole class and can be calculated for each class member using a common methodology." See Order, R. 93, at Page ID #4843. This model, designed to calculate lien penalties and interest charges, "stems from [the City's] course of conduct that applies to the class as a whole," and can be applied on that basis. Pls.' Mot. in Supp. of Mot. for Class Certification, R. 79, Page ID #3543–44. It stands to reason that not every member of the Water Lien Class will necessarily collect damages. But we are not concerned with such precisions at the class certification stage. For purposes of Rule 23(b)(3), the Water Lien Class is bound by the common question of whether the City's disproportionate placement of water liens on Black property owners in Cuyahoga County violates the FHA. While the merits of Plaintiffs' action are outside this appeal, discussed *infra*, the answer to their common question predominates over individualized computations of damages, which can be assessed at a later date. *See Hicks*, 965 F.3d at 460.

Regardless of economic damages, Cleveland contends that standing is improper because "up to 20% of the Water Lien Class" suffered no *economic injury* traceable to a water lien. Appellant Br., ECF No. 24, 26. No matter the truth of this statement, it falsely assumes that Plaintiffs' alleged injury under § 3604 is economic in nature. Instead, Plaintiffs have Article III standing by virtue of their FHA claim, which constitutes an injury in fact and is plainly cognizable given its close relationship to traditional harms. *Merck v. Walmart, Inc.*, 114 F.4th 762, 779–80 (6th Cir. 2024).

For standing to exist, a plaintiff must be injured in a recognized way. "Under constitutional standing doctrine, an 'injury in fact' is an 'invasion of a legally protected interest [*sic*] which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 773 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up)). To be "concrete," an injury cannot be abstract, and federal courts may use "history and tradition" as a blueprint for "the types of cases that Article III empowers [them] to consider." *TransUnion*, 594 U.S. at 424 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269,

274 (2008)).  Some injuries "readily qualify" as concrete, such as physical or monetary harms, or those specified by the Constitution.  *Id.* at 425.  Other harms may confer standing if "the asserted injury has a 'close relationship' to a harm 'traditionally' recognized 'as providing a basis for a lawsuit in American courts.'"  *Merck*, 114 F.4th at 773 (quoting *TransUnion*, 594 U.S. at 424).  While "an exact duplicate" is not required, plaintiffs should identity "a close historical or common-law analogue" for the injury they assert.  *Id.* (quoting *TransUnion*, 594 U.S. at 424).

Turning to Plaintiffs' alleged injury under the FHA, the appropriate analogue comes from Congress and the precedent of this Court.  *See id.* at 773, 779–80.  In *Merck v. Walmart*, we recognized that "[p]laintiffs under the Fair Housing Act have standing under Article III" because Congress analogized the harm of private discrimination in the housing market to the constitutional harm of racial discrimination by the government.  *Id.* at 779–80.  In so doing, we explicitly distinguished monetary harms that create automatic standing from those harms that Congress has elevated due to their "strong resemblances to constitutional claims."  *Id.* at 780.  This includes disparate-impact claims, which are cognizable under the FHA.  *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 539, 545–46 (2015) (noting that the "[r]ecognition of disparate-impact claims is consistent with the FHA's central purpose").  As the district court observed, "foreclosure or paid penalties is not the predicate to an actionable FHA claim," because the assessment of water liens alone is the injury.  *See* Order, R. 93, at Page ID #4848.  Any economic harm suffered by Plaintiffs, brought about by foreclosure or paid penalties to Cleveland Water, is auxiliary to their FHA claim and does not drive the cause of action.  Accordingly, Plaintiffs have standing to pursue their FHA claim on a disparate-impact theory, and questions of economic harm are irrelevant at this stage.  *Merck*, 114 F.4th at 779–80.

The City maintains that this reasoning is inconsistent with *TransUnion*, which differentiated a "concrete harm" from a mere "statutory violation," with only the former being eligible for damages.  594 U.S. at 425–27.  It attempts to argue that because "up to 20%" of Plaintiffs (one in five) did not allege an economic injury, this portion of the Water Lien Class suffered only a "statutory violation" (issuance of the water lien), and *TransUnion* bars certification.  *See* Appellant Br., ECF No. 24, 26.  We find the City's argument misplaced since *TransUnion* does not purport to govern Rule 23(f) appeals based on class certification.  *See* 594

U.S. at 442.  Rather, the Supreme Court addressed class member standing in the limited context of recovering damages, while offering virtually no guidance on standing at the class certification stage and disclaiming the intent to do so.  *See* 594 U.S. at 431 n.4, 442.  The Court expressly declined to "address the distinct question whether every class member must demonstrate standing before a court certifies a class," suggesting that a wider array of injuries may initially qualify.[9]  *See TransUnion*, 594 U.S. at 431 n.4.  This evinces the Court's intent to limit *TransUnion* to damages recovery, which has no bearing on the dispute here.

Even so, *TransUnion*, like *Merck*, 114 F.4th at 773–74, provided for Congress to use traditional harms as analogues for creating statutory causes of action.  594 U.S. at 425–26. *TransUnion* signaled that a lawsuit may not proceed unless the plaintiff suffered a "physical, monetary, or *cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts*."[10]  *Id.* at 427 (emphasis added).  An example of the latter harm is "racial discrimination by private housing providers," which Congress has prohibited because of the close relationship to a constitutional harm.  *See Merck*, 114 F.4th at 779 (citing *TransUnion*, 594 U.S. at 425).  Similarly, Plaintiffs allege that Cleveland's water policy makes housing "unavailable" on the basis of race because of the notable disparity in water liens placed on Black versus White homes.  42 U.S.C. § 3604(a); *see Bowen v. Am. Title Co.*, No. 04-2575, 2007 WL 9706328, at *4 (W.D. Tenn. Mar. 28, 2007) (explaining that § 3604 of the FHA "covers activities other than the purchase or rental of homes that have the potential to affect housing for minorities").  Because Plaintiffs' disparate-impact claim falls squarely within the FHA's scope and is thus comparable to traditional harms found in the Constitution, they have satisfied Article III standing.  *See Merck*, 114 F.4th at 779–80.

---

[9]This Circuit has not yet resolved the question of whether all class members must have standing at the class certification stage.  In *Speerly v. General Motors, LLC*, we affirmed the existence of Article III standing when all named plaintiffs experienced an alleged automotive defect, 115 F.4th 680, 696 (6th Cir. 2024), but *Speerly* has since been vacated for rehearing en banc.

[10]*TransUnion* offered several examples of "concrete injuries" that would authorize plaintiffs to recover damages, such as physical and monetary harms, as well as "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  594 U.S. at 425 (identifying reputational harms, disclosure of private information, intrusion upon seclusion, and harms specified by the Constitution as also belonging to this category).

Furthermore, the litigation of Plaintiffs' claim that Cleveland's water policy makes housing "unavailable" will resolve a common question "at the heart of the litigation" for the whole of the Water Lien Class, which consists of almost 1,000 members, all African American, who have suffered the placement of a water lien. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). For all the foregoing reasons, the district court properly certified the Water Lien Class pursuant to the predominance requirement of Rule 23(b)(3).[11]

## C. Merits of Plaintiffs' FHA Claim

The City asks this Court to address the merits of Plaintiffs' claim that "the act of placing a lien to secure unpaid debt owed to a public utility makes 'unavailable' or denies housing." Appellant Br., ECF No. 24, 1. But appeals brought under Rule 23(f) are limited to evaluating the district court's decision to certify a class, not whether the cause of action is meritorious. *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004); *In re Delta Air Lines*, 310 F.3d 953, 961 (6th Cir. 2022) ("A Rule 23(f) appeal should avoid mixing the merits of the case with the class certification issues." (citing *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107 (D.C. Cir. 2002))). At the certification stage, "[t]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation omitted).

Merits-based questions may only be considered to the extent that they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," and in the present case, we find that they are not. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). The district court certified the Water Lien Class under 23(b)(3) based on a common question (whether the City's disproportionate placement of water liens violates the

---

[11]As a peripheral matter, the City does not challenge the district court's determination with respect to the superiority requirement of Rule 23(b)(3), but we nonetheless observe that it is satisfied. In assessing superiority, "courts consider 'the difficulties likely to be encountered in the management of a class action,'" *Young*, 693 F.3d at 545 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007)), such as in cases producing a multitude of individual suits. *See id.* Given the 943 members of the Water Lien Class who have incurred a debt owed to Cleveland Water as a result of delinquent customer accounts, this suit embodies one where "aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.* (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).

FHA), and the answer to this question implicates the whole class at a broad level and predominates over individualized damages. Because Plaintiffs have alleged a disparate-impact claim under § 3604 which features a common question and supports standing under Article III, we have no occasion to engage in a merits-based inquiry or other statutory interpretation of Plaintiffs' cause of action pursuant to this appeal. We therefore hold that the district court did not abuse its discretion by certifying the Water Lien Class under Rules 23(b)(2) and 23(b)(3). *See Merck*, at 114 F.4th at 779–80.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.

No. 24-3395        *Pickett, et al. v. City of Cleveland, Ohio*        Page 16

––––––––––––––––

**CONCURRENCE**

––––––––––––––––

JULIA SMITH GIBBONS, Circuit Judge, concurring.  I join the majority's well-reasoned opinion.  However, I also write separately to further explain why the City *cannot* forfeit a 23(b)(2) challenge.

A Rule 23(b)(2) class action is proper when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  In other words, a district court should certify a Rule 23(b)(2) when relief can be provided to the members of the class through "a single injunction or declaratory judgment[.]"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).  Like the Rule 23(b)(3) class discussed by the majority, a Rule 23(b)(2) class must also satisfy the pre-requisites set out in Rule 23(a).  *See  Ball v. Union Carbide Corp.*, 385 F.3d 713, 727–28 (6th Cir. 2004).

The district court erred as a matter of law when it stated that the City had forfeited its Rule 23(b)(2) challenge.  Parties seeking class certification *must* satisfy the pre-requisites under Rule 23(a) and 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).  The burden of proof on this issue is on the party seeking class certification.  *See In re Am. Medical Systs., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  The protections essential to all class actions cannot be forfeited by the *defendant* who does not represent the interests of the very people whose rights they are ostensibly forfeiting.  The Supreme Court has "reiterate[d]" that class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  That is why district courts must conduct a rigorous analysis into whether the prerequisites of Rule 23 are met before certifying a class.  *See id.* at 160 ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable.").

In fact, Rule 23(a)(4), itself, is a "constitutional requirement articulated in *Hansberry v. Lee*, 311 U.S. 32, 61 (1940), that the 'named plaintiff at all times adequately represent the

interests of the absent class members.'"   *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 n.24 (1999) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).  It would make very little sense if the City was the one with the power to forfeit the constitutional rights of the Black residents of Cuyahoga County.

Thus, the protections set out in Rule 23 are not the defendant's rights to forfeit because class actions protect the rights of absent class members.  This is why circuits have instructed district judges in certifying a class to act essentially as a "fiduciary of the class" that must conduct its own rigorous inquiry.  *See, e.g.*, *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 555 (7th Cir. 2017) (noting the role the district court plays as a fiduciary protecting the rights of absent class members); *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 751–52 (8th Cir. 2003) (same); *Drazen v. Pinto*, 106 F.4th 1302, 1308 (11th Cir. 2024) (same); *see also Martinez-Mendoza v. Champion Intern. Corp.*, 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) (noting that the trial court has "an independent obligation" to decide the appropriateness of a class action when neither party moves for a ruling on the issue (citation omitted)).  Whether a plaintiff can represent a class, including the absent class members, depends on *the plaintiff's* ability to satisfy the requirements of Rule 23.  *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 422 (6th Cir. 2012).  And if the class requirements are not met, the ultimate disposition of the class action can be collaterally attacked, and any judgement is not final.  *See id.* at 421.  This is another reason why a district court must always rigorously analyze the appropriateness of a class action under Rule 23:  if it does not, the ability of a class action to adjudicate a series of mass actions in a single swoop will be significantly undermined.  *See Williams v. U.S. Dist. Court*, 658 F.2d 430, 436 (6th Cir. 1981).

Thus, the City did not forfeit its challenge to the Rule 23(b)(2) class action.  In fact, it lacks the ability to do so.

That being said, a Rule 23(b)(2) class here was proper.  I share and concur in the majority's view that the Rule 23(a) requirements were satisfied.  Having satisfied Rule 23(a), I believe that the requirements of Rule 23(b)(2) were also met.  Rule 23(b)(2) provides that class certification is permissible where a class representative meets all of Rule 23(a)'s requirements and 'the party opposing the class has acted or refused to acts on grounds that apply generally to

the class, so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"  *Davis v. Cintas Corp.*, 717 F.3d 476, 489 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(2)).  Because plaintiffs seek an injunction and declaratory judgment that the City of Cleveland's water practices are unconstitutional, the class is indivisible and is valid under Rule 23(b)(2).  *Dukes*, 564 U.S. at 360; *see also* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (1997) ("[T]he conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.").

In the narrowest sense, my concurrence may seem to not matter as ultimately the requirements of Rule 23(b)(2) and Rule 23(b)(3) were satisfied in this case.  But the question of whether a defendant can forfeit a challenge to class certification or whether the courts have an independent obligation under Rule 23 is a very important one.  Rule 23 is a unique rule in that it was designed not to protect those involved in the case, but to protect those who are *not*.  *See Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1090 (6th Cir. 2016).  If we allow defendants' alleged failure to brief a Rule 23 issue to create a so-called forfeiture of Rule 23, we disregard the protections of Rule 23.  For that reason, I feel compelled to write separately.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-3395

ALBERT PICKETT, JR.; KEYONNA JOHNSON; JAROME
MONTGOMERY; ODESSA PARKS, deceased; TINIYA
SHEPHERD, on behalf of themselves and all others similarly
situated,

      Plaintiffs - Appellees.

    v.

CITY OF CLEVELAND, OHIO,

      Defendant - Appellant.

```
┌──────────────────────────┐
│         FILED            │
│      Jun 09, 2025        │
│  KELLY L. STEPHENS, Clerk│
└──────────────────────────┘
```

Before:  CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

Kelly L. Stephens, Clerk